James W. MILLER, John A. Miller, William M. Schmidt, James Goodloe, Ernest E. Van Kirk, Henry Boyd, Neal T. Zentmire, Gilbert Bond, Max Bell, Alfred Koth, Michael Pender and Robert L. Snyder, Plaintiffs,

v.

The LAY TRUCKING COMPANY, INC., Jack Lay, the Bankers Life Company, Dennis Kessler, Lay Trucking Company, Inc. Union Employees Retirement Plan, Defendants.

No. S 82–495.

United States District Court,
N.D. Indiana,
South Bend Division.

April 8, 1985.

Thomas J. Brunner, Jr., South Bend, Ind., for plaintiffs.

James W. Oberfell, South Bend, Ind., Martin W. Kus, LaPorte, Ind., for defendants.

Dennis Kessler, pro se.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Plaintiffs, James W. Miller, John A. Miller, William M. Schmidt, James Goodloe, Ernest E. Van Kirk, Henry Boyd, Neal T. Zentmire, Gilbert Bond, Max Bell, Alfred Koth, Michael Pender and Robert L. Snyder, initiated this action on October 29, 1982, alleging violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1101, *et seq.*, breach of contract and common law fraud. As relief from this court, plaintiffs seek a declaratory judgment against defendants with respect to violations of various ERISA provisions, damages pursuant to ERISA, punitive damages in the amount of $500,000, specific performance of the alleged contract entered into between the parties in 1979, attorney fees and the costs of the suit. Jurisdiction of this court is predicated upon federal question jurisdiction, 28 U.S.C. § 1331 and, more specifically, 29 U.S.C. § 1132 providing for civil enforcement of ERISA and for jurisdiction of the district courts of the United States. Jurisdiction over the state claims is grounded on a theory of pendent claim jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). This case was tried before the court sitting without a jury on February 25 and 26, 1985 in South Bend, Indiana. In accord with the Seventh Circuit Judicial Council Resolution dated October 4, 1984, post trial briefs were submitted to this court on March 11, 1985. This memorandum and order constitutes this court's findings of fact and conclusions of law for purposes of Fed.R.Civ.P. 52(a).

### I.

In 1979, plaintiffs were employed as truck drivers and mechanics for defendant, Lay Trucking Company, Inc. (Lay Trucking) and as such were all members of the General Teamsters, Chauffeurs and Helpers Union Local 298 (Teamsters). At that

time, plaintiffs were subject to, and participants in, a pension program administered by the Central States Pension Fund of the Teamsters. In 1977, Jack Lay became concerned about the excessive cost of the Teamsters Health, Welfare and Pension Funds offered through the Central States fund and sought ways to reduce those costs by converting to a private plan. Thereafter, Dennis Kessler approached Lay with a proposal for a private pension plan which would reduce the costs to the company. After having investigated several other plans, Kessler proposed the Bankers Life program as that which would best accommodate the needs of Lay Trucking. Lay advised Kessler that such a plan would be attractive to the company if it offered to his employees pension benefits equal to or better than those offered by the Central States Fund.

In later winter or early spring of 1979, plaintiffs were approached by Lay about transferring the company's pension and health and welfare plans from Central States to the new plan issued by Bankers Life. At the initial meeting, Lay told plaintiffs that the major reason for the change in plans was financial. He informed them that the company could no longer pay the excessive premiums to the Central States fund and, therefore, would be forced to close its doors if the plan was not converted to a private pension plan. It was at this meeting that Dennis Kessler was introduced to the drivers and the mechanics. Kessler made a presentation on behalf of the Bankers Life plan and responded to plaintiffs' questions. At this time Kessler did identify himself as a Bankers Life agent,[1] and passed out written literature outlining the plan.

Because the plaintiffs were skeptical about switching plans and requested more information, Kessler compiled benefit information drawn from Bankers Life home office in Des Moines, Iowa. Based on such information, in July 1979 he presented each plaintiff with a "benefit display sheet." Each sheet stated what each plaintiff's monthly benefit "will be" at the date of his normal retirement. There was no indication on these sheets that the stated monthly benefits were projections or estimates. However, during Kessler's presentation of the program, he informed all present that the year to year benefits were based upon anticipated manual defined benefits of future Teamster's contract negotiations.

On August 11, 1979, plaintiffs, against the recommendation of their bargaining agent, Harold Schutte, voted to change to the private pension plan offered by Kessler. Plaintiffs were informed at that meeting that the vote had to be submitted to the Teamsters' Central States Drivers Council for approval. If rejected by that group, another notification meeting would be called. On August 22, 1979, Lay, on behalf of the company, applied for a group annuity pension contract with Bankers Life. That agreement became effective on September 1, 1979.

However, on September 5, 1979, the Teamsters Council informed the local union that it would not authorize any company pulling out of the Central States Pension Fund. Negotiations continued between the representatives of the local union and Lay Trucking to obtain approval from the Central States Fund for a change in the pension plan. On March 1, 1980, a second ratification meeting was held which was attended by plaintiffs, their bargaining agents, Lay and Kessler. Once again, Kessler explained the insurance plan and answered the questions propounded by plain-

---

1. Kessler was recruited as a Bankers Life agent by Bankers Life's South Bend Manager, Robert Grossnickle, in 1973. Grossnickle trained Kessler and assisted him and others in obtaining their Indiana insurance licenses. Upon receiving his license, Kessler was based in the South Bend office and received stationery and business cards identifying him as an agent for Bankers Life. As an agent and with respect to life and health policies, he was to give preference to Bankers Life in the sale of individual policies. There was no agreement concerning group policies. Kessler's agent contract was terminated on December 31, 1981 by Bankers Life but a broker's contract which allowed Kessler to write Bankers Life policies, as well as those of other companies, was issued in its place.

tiffs individually or their bargaining agents. A vote was taken by plaintiffs and the Bankers Life plan was accepted. Lay Trucking made the change to the private pension plan retroactive to September 1, 1979, the date upon which it had begun paying premiums to Bankers Life.

In addition to the monthly payment amounts, the Bankers Life program was superior to the Central States plan in other ways. The change of plans in itself would allow the company to continue operation. The vesting requirements, retirement age qualification, absence of a "non-compete" clause,[2] and spousal benefits were all better than the same benefits under the Teamsters' plan. Moreover, the financial integrity of Bankers Life Company was perceived by plaintiffs as being better than the Central States Fund.

Lay believed that Kessler was to administer the plan. The position of administrator required both a formal appointment and the payment of a designated fee. Although Kessler received neither the appointment nor the fee, he did perform certain administrative duties with respect to the pension plan, particularly distributing display sheets and answering questions by plaintiffs with respect to the proposed pension plan. During the period of time between the beginning of the plan and late 1982, Kessler communicated with Lay and represented himself in the communications as the administrator of the Lay Trucking Company, Inc. Union Employees Retirement Plan. The annuity agreement given by Kessler to Lay for his signature stated that the plan administrator was the "Lay Trucking Company, Inc. Union Employees". No individual was listed as the administrator. Lay was unaware that he was under any responsibility to administer the Bankers Life plan and did not in fact discuss the possibility of assuming that role

until Kessler left Indiana in 1982. At that time Lay had to take upon himself the administrative duties of the private plan.

In the first quarter of 1980, plaintiffs received a second set of benefits display sheets prepared by Kessler which showed the same benefit levels as stated in July 1979. These sheets, as well as the ones produced in July 1979, followed the format for benefit display sheets used by Bankers Life and incorporated benefit data received from Bankers Life home office in Des Moines. The 1980 display sheets did include the word "estimated" in one portion of the report.

On January 1, 1981, almost a year and a half after they had voted to switch plans, plaintiffs received benefit display sheets indicating benefits different from those quoted on July 1, 1979. These display sheets disclosed that plaintiffs were entitled to monthly benefits in an amount approximately one-half of that stated before the vote to change plans.

Plaintiffs contacted their union representatives in order to resolve the discrepancy in benefit levels. The union representatives, in turn, contacted Jack Lay. In response to the inquiry, Lay issued a memorandum indicating that the amounts stated for the monthly pension benefits at the time of negotiations "were correct."

Kessler received copies of the summary plans for use by the plaintiffs in early January 1980. He was aware that federal law required participants in the Bankers Life Plan to be informed of the provisions of the new plan, including its benefit levels, within 90 days from the date they became subject to the plan but he did not believe that Lay was aware of such requirement nor did he so inform Lay.[3] Kessler put the documents in the trunk of his car for about

---

**2.** The absence of a "non-compete clause" essentially allows an individual to hold gainful employment as a private truck driver and, at the same time, to receive pension benefits.

**3.** Bankers Life's service contract with Lay Trucking states that the plan summary booklets "are provided at no extra cost" but does not

indicate whether Bankers Life provides booklets directly to the participants in a plan. Richard Clark, Assistant Group and Pension Manager for Bankers Life, testified that it was the practice of Bankers Life to provide the summary plan booklets to their clients who then undertook the responsibility of distributing them.

a week and then delivered them to Lay. Sometime thereafter Lay returned the booklets to Bankers Life to correct a printing error and distributed them after such error was corrected. The summary plans from the Teamsters were always a year or so late so Lay was not sure when he distributed the booklets. Plaintiff, James Miller, testified that plaintiffs received the summaries of the Bankers Life plan in September 1982, shortly before this lawsuit was filed.

The summary plan received by each plaintiff in September 1982 indicated that their "Earned Benefit" equaled $175.00 before January 1, 1980 and $550.00 after January 1, 1980. These monthly benefits were less than the benefits which had been promised plaintiffs in July 1979 by a factor of from $350.00 to $600.00.

After the start of this litigation, plaintiffs received a second summary plan on or about February 11, 1983 indicating that the maximum Earned Benefit, after April 1, 1981, would be $775.00. Although this figure was less than the $900.00 figure quoted in the July 1979 benefit display sheet, the figure matched that at which the Teamsters Central States Plan had been frozen in 1982. Plaintiffs, Miller, Zentmire, Schmidt and Koth have now retired and are receiving benefits at a level more than $125.00 less, on average, than what had been promised them in July 1979. An additional plaintiff, James Goodloe, has reached retirement age but has not yet retired. The remaining plaintiffs will reach their retirement dates at specific times in the future.

In searching for an alternative plan, Lay had committed himself to duplicating the present and future defined benefit of the Teamsters union. Therefore, he and Kessler determined that they were going to adhere to the defined benefit established by the Teamsters Plan C–5 and improve the internal benefits such as vesting, break-in-

service, and retirement options. In computing the figures that appear on the July 1979 benefit display sheet, Kessler made the following assumptions: a 6% inflation factor per year for future benefits, determination of the changes in the 1982 contract negotiated benefit through the use of a 15% single year adjustment (the adjustment percentage was arrived at by reviewing the past three benefit changes as of the year of contract renegotiation through the Teamsters), and the use of past service contingencies to insure that consideration for service was not lost. In sum, the monthly benefits were geared to keep pace with the Teamsters Plan. While Kessler intended the July 1979 benefit display sheet, he admitted that the use of the words "will be" was a poor choice of words on his part. Moreover, 1½ years after preparing the July 1979 benefit display sheet Kessler discovered that the work he had done could have been handled entirely in the Bankers Life home offices.[4]

## II.

Plaintiffs argue that the failure of defendants to honor their commitment to pay benefits at the levels found in the July 1979 benefit display sheets given to each plaintiff as an inducement to vote for a plan change constituted a breach of the pension contract entered into by the parties. Plaintiffs also contend that the promised benefit levels given each plaintiff by Lay Trucking and Bankers Life were given with the knowledge that they would not be honored or with a reckless disregard for their accuracy. As a result, it is alleged that plaintiffs were fraudulently induced to switch plans. Finally, plaintiffs assert that the actions of defendants in this regard are in breach of their fiduciary duties and violate both ERISA and state and federal common law.

---

**4.** Robert Grossnickle, the manager of the South Bend office of Bankers Life from October 1, 1972 until March 1, 1979 and Kessler's supervisor during that period of time, opined that it was not proper for Kessler to prepare plan summary sheets since it was outside the scope of an agent's duties.

## A.

As an initial consideration, this court must address the question of whether plaintiffs' common law counts of breach of contract and fraud are preempted by ERISA. Defendant, Bankers Life, relies on the preemption provision of ERISA to support its contention that plaintiffs' common law counts of breach of contract and fraud are not sustainable since both have been preempted by the act. The preemption provision of ERISA reads as follows:

> [a] Except as provided in subsection [b] of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003[a] of this title and not exempt under section 1003[b] of this title. This section shall take effect on January 1, 1975
>
> 29 U.S.C.A. §§ 1144[a] [West 1975].

Plaintiffs contend that their pendent claims are not preempted by ERISA since common law causes of action, such as fraud and breach of contract, relate to areas of important state concern. They find support for their position in *Bucyrus-Erie Co. v. Department of Industry, Labor & Human Relations*, 599 F.2d 205 [7th Cir. 1979] *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 [1980]. In that case the Seventh Circuit held that the Wisconsin fair employment law was not preempted under ERISA. The court reasoned that the Wisconsin statute was not preempted since to rule otherwise would alter the federal framework for prohibiting employment discrimination. *Id.* at 213.

In further support of their proposition, plaintiffs cite *Gould, Inc. v. Pension Benefit Guaranty Corporation* 589 F.Supp. 164 [S.D.N.Y.1984] and *Provience v. Valley Clerks Trust Fund*, 509 F.Supp. 388 [E.D. Cal.1981]. In *Gould*, the court was confronted with a contractual dispute arising out of a settlement agreement between a corporation, a union and a surety in which the surety had become the guarantor of the corporation's pension obligations to the un-

ion. The court concluded that the contractual dispute between the parties was a "remote rather than central consideration" in the case and found that ERISA did not preempt the contractual claim.

Likewise in *Provience*, the court found that state law causes of action were not preempted by ERISA. The court reasoned that the law of fraud in California, together with other state laws alleged to be preempted by defendant, "are laws of general concern and ... that such laws indirectly affect, but do not regulate the ERISA plan here involved." *Provience*, 509 F.Supp. at 391.

The Supreme Court addressed the impact of § 514[a] of ERISA, 29 U.S.C. § 1144[a] in *Alessi v. Raybesteos—Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 [1981]. In that case, the Court found that an Amendment to New Jersey's Worker's Compensation Act, by which the right to worker's compensation could be set off against employees retirement pension benefits, was preempted by § 514[a] insofar as it intruded on the field of private pension regulation. Although the Court held that the preemption provision should be broadly construed, it did not need to reach the question of the "outer bounds" of ERISA's preemption language in that case. *Id.* at 524–25, 101 S.Ct. at 1906–07. Moreover, lower courts have reached varying conclusions as to the meaning of the preemptive language. *See Bucyrus-Erie Company v. Dept. of Industry, Labor, supra* [complaint that company's benefit plan is sex discriminatory; Wisconsin Fair Employment Act barring sex discrimination would be preempted by ERISA but for saving clause, § 1144[d], exempting from ERISA preemption state statutes which would affect other federal statutes such as Title VII]. *Cf. Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 [8th Cir.], *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 [1981] [complaint that defendants tortiously interfered with rights guaranteed under ERISA; Congress unmistakably intended to "occupy the field" of employee benefit plans so that ERISA

preempts state laws which either directly or indirectly relate to a plan].

■ As it must, this Court follows the dictate of the United States Court of Appeals for the Seventh Circuit that the preemptive language of ERISA should be broadly construed. State law that purports to govern the "terms and conditions" of pension plans generally is preempted by ERISA unless "it relates to such plans 'only in the most remote and peripheral manner.'" *Bucyrus-Erie Co. v. Department of Industry, Labor & Human Relations*, 599 F.2d at 209–10, citing *AT & T v. Merry*, 592 F.2d 118, 121 [2d Cir.1979]; *Ovitz v. Jefferies & Co., Inc.* 574 F.Supp. 488, 491 [N.D.Ill.1983]. Count III of plaintiffs' complaint alleges a breach of the contractual pension plan agreement entered into between plaintiffs and Bankers Life. In the cases relied upon by plaintiffs in support of their position, the state law claims not preempted by ERISA were those that were peripheral, remote, or indirectly related to the pension plan at issue. In this case, the contractual claim goes to the terms of the pension agreement itself. To allow common law contractual principle to regulate the pension agreement is directly infringing on the federal scheme as set out in ERISA. Because Congress has already provided a remedy for the conduct alleged, § 502[a][1][B] of ERISA, 29 U.S.C. § 1132[a][1][B], this court concludes that Count III, premised on common law breach of contract, is preempted by ERISA.

■ The court finds, however, that there is no preemption of the fraud claim. Plaintiffs allege that they were fraudulently induced to switch pension plans. Therefore, the alleged fraudulent activities by defendants took place prior to any contract being entered into with Bankers Life and do not directly affect the regulation of the ERISA plan in this case.

### B.

■ Defendant Bankers Life also contends that plaintiffs have failed to exhaust their remedies as required under the terms of the collective bargaining agreement. This Court does not agree with such position. Plaintiffs' breach of contract action was not brought pursuant to § 301 of the Labor Management Relations Act but rather under ERISA. The contractual pension agreement which is alleged to have been breached was entered into by plaintiffs with Bankers Life agent, Dennis Kessler, Bankers Life and Lay Trucking. Bankers Life and Dennis Kessler are not parties to the collective bargaining contract entered into by Lay Trucking with the Teamsters and would not be bound by any decision reached under the agreement's grievance procedure.

Section 1132 of ERISA provides a statutory vehicle for pension fund participants or beneficiaries to recover benefits or otherwise clarify their pension rights under ERISA. This section has been found to be separate from Section 301 of the Taft-Hartley Act for pension fund "... beneficiaries ... to sue to recover benefits or to otherwise clarify or enforce their pension rights ..." *Leonardis v. Local 282 Pension Trust Fund*, 391 F.Supp. 554, 555–56 [E.D. N.Y.1975]. Therefore, exhaustion of administrative remedies under the collective bargaining agreement was not necessary in this case.

### C.

The court turns now to the question of ERISA violations. Plaintiffs allege that defendants, as fiduciaries, failed to act solely in the interest of plan participants. Specifically, plaintiffs allege that defendants misrepresented the benefits to be received by them under the proposed plan, thereby inducing them to switch from the Teamsters plan to Lay Trucking's present plan. Consequently, those plaintiffs who are retired are receiving benefits less than those previously quoted by the defendants. Additionally, pension plan reports and summaries required under ERISA which would have alerted plaintiffs to the benefit discrepancies were not provided to plaintiffs on time by either Lay Trucking or Bankers Life. Thus, it is necessary to inquire which defendant owed a fiduciary duty to the

plaintiffs and whether that duty was breached.

Section 3[21][A] of ERISA, 29 U.S.C. § 1002[21][A] provides in part that

... a person is a fiduciary with respect to a plan to the extent [i] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, [ii] he renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so, or [iii] he has any discretionary authority or discretionary responsibility in the administration of such plan....

The duties of a fiduciary are set out in § 404 of ERISA, 29 U.S.C. § 1104:

Fiduciary Duties.[5]

[a][1] Subject to Sections 1103[c] and [d], 1342 and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

[A] for the exclusive purpose of:

[i] providing benefits to participants and their beneficiaries; and

[ii] defraying reasonable expenses of administering the plan;

[B] with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiarity with such matters would use in the conduct of an enterprise of a like character and with like aims;

[C] by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

[D] in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter....

It is apparent from the evidence that many of the defendants were unsure whether they were fiduciaries under the plan. Indeed, this record reflects that there was marked confusion in the minds of the defendants as to the identity of the plan administrator. Lay Trucking Company, Inc. is listed as a fiduciary in the plan document itself. The company is also listed as plan administrator in the plan document as well as in the application for the annuity contract. Lay, in turn, testified at trial that he was unaware Lay Trucking had been named administrator of the plan and that he had relied upon Kessler to provide the necessary administrative services to the plan.

Kessler substantiated Lay's claim to limited administrative involvement in his testimony. Kessler stated at trial that Lay was probably unaware of his responsibilities as administrator and that he had assisted Lay in performing some administrative functions. These functions consisted of advice on the type of investments to be made in the Bankers Life Plan, preparation of documents for the Pension Benefit Guarantee Corporation [PBGC], and preparation of benefit display sheets indicating the monthly benefit for each plaintiff. The documents prepared by Kessler for submission to the PBGC list Kessler as "plan administrator" and his signature appears in the space reserved for that of the plan administrator.

■ Since Congress took a functional approach in defining who was to be a fiduciary under ERISA, it is necessary to scrutinize each defendant in relation to the conduct alleged. Kessler was solely responsible for formulating the specifications of

---

**5.** Section 1103 referred to in this section indicates that the assets of benefit plan are to be held in a trust under the authority of a trustee. However, § 1103[b] exempts from the requirement of establishing a trust and appointing trustees any assets of a plan which consist of insurance contracts or policies issued by an insurance company qualified to do business in the state.

the proposed Bankers Life Plan which were then sent to another Bankers Life official, Richard Clark. Kessler gave investment and other advice to Lay regarding the Bankers Life plan. Moreover, he prepared benefit reports for participants in the program and proposed reports for the PBGC listing himself as administrator.[6] These facts compel the conclusion that Kessler was exercising sufficient discretionary authority and control with regard to the administration of the plan as to make him a fiduciary.

This conclusion comports with the opinions of those courts who have taken a broad view in deciding whether a particular provider of services should be a fiduciary under ERISA. These courts have held that plan administrators and consultants who effectively control or guide a plan's management are fiduciaries. *See, e.g., Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 635 [W.D.Wis.1979]. In *Brink v. DaLesio*, 496 F.Supp. 1350, 1374 [D.Md.1980], *rev'd in part, aff'd in relevant part*, 667 F.2d 420 [4th Cir.1981], the court found that an insurance broker was a fiduciary for the purposes of ERISA since he was solely responsible for formulating the specification when bills were sought, making the initial decision whether bids were to be solicited on occasion, analyzing the bids, presenting his analysis to the trustee of the welfare fund and providing investment advice to the trustees. In reaching its conclusion, the court relied on the legislative history of ERISA relating to the fiduciary issue:

> [t]he term 'fiduciary' ... includes persons to whom discretionary duties have

been delegated by named fiduciaries. While the ordinary functions of consultants and advisers to employee benefit plans ... may not be considered as fiduciary functions, it must be recognized that there will be situations where such consultants and advisors may, because of their special expertise, in effect, be exercising discretionary authority or control with respect to the management or administration of such plan or some authority regarding its assets. In such cases, they are to be regarded as having assumed fiduciary obligations within the meaning of the applicable definition.

496 F.Supp. at 1375 quoting House Conf. Rep. No. 1280, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 5038, 5103.

Plaintiffs do not specify what specific duty under § 404 of ERISA was breached. They generally allege that Kessler breached his fiduciary duty to act always in the best interest of the plan participants and beneficiaries. From this record, the court can only infer that Kessler has allegedly breached § 1104[a][1][A][i] by failing to provide benefits to the participants in the plan according to agreement and § 1104[a][1][B] by failing to act with an appropriate prudence and reasonableness in managing the distribution of benefits. In addition, plaintiffs allege that Kessler breached the duty of disclosure and reporting under § 101 of ERISA, 29 U.S.C. § 1021.[7] Chief among the materials to be furnished plan participants and beneficiaries is a summary plan description which includes, *inter alia*, information about the actual pension benefits.[8] The time limits

---

6. Kessler was never formally appointed as administrator of the plan nor did he receive a designated fee for performing administrative functions.

7. § 1021 provides in pertinent part:
 [a] Summary plan description and information to be furnished to participants and beneficiaries
 The administrator of each employee benefit plan shall cause to be furnished in accordance with Section 1024[b] of this title to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan—

[1] a summary plan description described in Section 1022[a][1] of this title; and
[2] the information described in Section 1024[b][3] and 1025[a] and [c] of this title.

8. § 1022 reads, in relevant part:
 [a][1] A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in Section 1024[b] of this title. The summary plan description shall include the information described in subsection [b] of this section, shall be written in a manner calculated to be understood by the

for distributing such plan is normally 90 days. *See* § 104[b][1], 29 U.S.C. § 1024[b].[9]

The record reflects that Kessler was not the designated administrator of the plan. It was Kessler's good faith belief that the administrative functions performed for Lay Trucking were part and parcel of his responsibility of servicing the pension program to a state of self-sufficiency. Kessler has maintained from the onset of this action that his goal in fashioning a program for Lay Trucking was to adhere to the defined benefit established by the Teamsters' Central States Program. He prepared the controversial benefit projection sheet of July 1979 only at the request of the drivers and Lay. Kessler, a very credible witness, testified that during the presentation of the July 1979 benefit projection sheet, he informed all in attendance that the year to year benefits were based on anticipated manual defined benefits through future Teamsters contract negotiations. He further indicated that the projections beyond March 31, 1983 were based on historical Teamsters increases.

■ The current Teamster Defined Benefit level is $775.00 per month, retirement at age 60, and the Lay Trucking package reflects the same monthly monetary benefit. In addition, the Bankers Life plan offers more advantageous benefits to the drivers in the form of reduced vesting requirements, absence of non-compete clauses, and better spousal benefits, among others. The record is clear on this point. Dennis Kessler has admitted that he did make a mistake in using the words "will be" in the July 1979 benefit report and in attempting to make projections beyond the March 31, 1983 date. However, based on what the court views as the very credible testimony of Kessler, the court concludes that Kessler's oral explanation was adequate notice of the tentative nature of the printed benefit projection sheet and that plaintiffs are the recipients of benefits equal to and better than those of the Teamster Central States program. Thus, the court finds no breach of Kessler's fiduciary duty under 29 U.S.C. § 1104.

■ There remains the alleged breach of the reporting requirement under § 1021. Even after a full trial in this case, there remains an open question as to whether Kessler or Lay had the responsibility within the first ninety days after the rat-

---

average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A *summary of any material modification in the* terms of the plan and any change in the information required under subsection [b] of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with Section 1024[b][1] of this title.
[b] The plan description and summary plan description shall contain the following information: The name and type of administration of the plan, the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles, and addresses of any trustee or trustees [if *they are persons different from the administrator*]; a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of

benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan and the remedies available under the plan for the redress of claims which are denied in whole or in part [including procedures required under Section 1133 of this title].

**9.** § 1024[b][1] reads as follows:
[b] Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:
■ The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary, plan description, and all modifications and changes referred to in Section 1022[a][1] of this title—
[A] within 90 days after he becomes a participant, or [in the case of a beneficiary] within 90 days after he first receives benefits, or [B] if later, within 120 days after the plan becomes subject to this part.

ification of the plan in 1980 to distribute the booklets. The contract for services between Bankers Life and Lay Trucking indicated that summary plan booklets were to be produced but is silent on to whom the booklets are to be distributed. The record reflects that Kessler received copies of the summary plans in early January 1980 and delivered them to Lay approximately a week later. Kessler was aware of the ERISA requirements on reporting benefit levels of new plans but he failed to inform Lay of such limitations. Nevertheless, Lay was no novice to the custom and practice of distributing such benefit booklets to his employees as he had done so under the former Teamsters Central States plan. In distributing the summary plan to Lay, Kessler followed the normal procedure of Bankers Life. Accordingly, the court finds no breach of § 1021 by Kessler. Absent a breach, there is no basis for the imposition of a fine pursuant to § 1132[c] as requested by plaintiffs.

■ Because Kessler is a fiduciary, so too is his principal, Bankers Life. Bankers Life contends that Kessler did not have actual authority to enter into discussions with plaintiff on a new pension plan and that any representations he made regarding benefit levels were made without the knowledge and authority of Bankers Life. Even though these contentions are true, testimony by Kessler and plaintiff Miller indicate that Kessler did not disclose any limitations on his power as an agent when he met with plaintiffs on at least four different occasions in his effort to sell the Bankers Life plan nor were any limitations apparent, at any time thereafter. Therefore, under the legal principle of apparent authority, Bankers Life is bound by Kessler's actions.

For purposes of apparent authority, the actual arrangements between the principal and the putative agent are irrelevant. Instead, one looks to the appearance of authority with which the principal clothes the agent. The rationale behind this development in the law of agency is that a third person, who may not have knowledge of the actual arrangements or relationship between the principal and the agent, should be able to rely in dealings with a putative agent upon his reasonable expectations garnered from the actions of the principal as to the scope of that agent's authority. *Riverside Insurance Company of America v. Smith*, 628 F.2d 1002, 1010 [7th Cir.1980].

■ This rationale was succinctly stated in *Yellow Manufacturing Acceptance Corporation v. Voss*, 158 Ind.App. 478, 488, 303 N.E.2d 281, 283 [1973] [quoting *Farm Bureau Mutual Insurance Company v. Coffin*, 136 Ind.App. 12, 18, 186 N.E.2d 180, 183 [1962]:

> When one has the appearance of a general agent the law is clear that a third person dealing with him is not bound to inquire into his specific authority, nor is the principal protected by secret limitations upon the authority of such an agent. The reason for the rule is that where one of two innocent persons must suffer because of the betrayal of a trust reposed in a third, the one who is most at fault should bear the loss. Since the principal put the agent in the position of trust, he is the one who should suffer the detriment. [Citations omitted.]

Because this court has found no breach of fiduciary duty under 29 U.S.C. § 1104 by Dennis Kessler, applying the legal principle of agency, the court finds no breach of duty under 29 U.S.C. § 1104 by Bankers Life. No evidence has been presented other than that Bankers Life has faithfully managed the assets of the plan in accord with the prudent man standard of care.

As in the case with Kessler, plaintiffs allege that a failure by Bankers Life in providing adequate information concerning the status of the pension plan is in violation of §§ 1021, 1023 and 1025 of ERISA. With respect to § 1021, Bankers Life prepared the booklets and Kessler delivered them to Lay, the nominal administrator for distribution to the participants in January 1980. Section 1023 pertains to the Annual Reports to be filed with the Secretary of Labor. Bankers Life provided to Lay

Trucking, the administrator, all of the information necessary to enable the administrator to comply with this provision. No evidence was presented that Bankers Life failed to adequately and timely provide that information and plaintiffs have included, as exhibits, copies of the described Annual Reports. Section 1025 states that each administrator of an employee pension benefit plan shall furnish to each participant who so requests in writing the latest available information as to accrued benefits. Such information was provided each plan participant each year. The evidence does not reveal what requests may have been made in writing to the administrator but all inquiries received directly or indirectly by Bankers Life were promptly answered. On this record, the court finds no breach of the reporting requirements of ERISA, and, again, no basis for the imposition of a fine pursuant to 29 U.S.C. § 1132[c].

Finally, the court turns to the last defendant, Jack Lay. Reviewing the type of fiduciary responsibilities referred to in § 1104, it is apparent that Lay does not neatly fall within the definition offered by § 1002[21][A]. Although the nominal administrator, Lay did not exercise any discretionary control respecting the management of the plan other than to pay the premiums to Bankers Life. The record reflects that both he and Kessler testified that he was provided with the Bankers Life contract which had been previously filled out by someone other than Lay. Lay signed the group annuity contract and both he and Kessler testified that Lay did not question Kessler's instruction for signature. Nor did Lay render investment advice. Finally, Lay was totally naive with respect to the administration of the private plan. Kessler stated that he performed some administrative duties until 1982 when he left this state. Lay testified that it was not until Kessler informed him of plans to leave the state of Indiana that he was aware he was to become a plan administrator. Further, Lay testified that he thought that the administrative services offered by Bankers Life encompassed all administrative duties.

As discussed above, the concept of fiduciary under ERISA is a functional one. The key language in the statutory definition is that a person is a fiduciary "to the extent" he or she exercises control or authority over the plan. *Leigh v. Engle*, 727 F.2d 113, 133 [7th Cir.1984]. Thus, ERISA recognizes that a person may be a fiduciary for some purposes and not others. *Id.* This court finds that Lay did have some discretionary authority over the responsibility of the administration of the plan after November 7, 1982 when he was informed that Kessler was terminating his administration of the health and welfare plan and leaving the area.

 It is in this limited fiduciary capacity, that the court must measure the charges of breach of § 1104. In doing so, this court concludes that Lay fulfilled his duties under § 1104 in light of his limited knowledge as an administrator pursuant to the Bankers Life group annuity contract. Lay has the duty to take prudent and reasonable action to determine whether Bankers Life was fulfilling its obligations toward the plan. *Leigh v. Engle*, 727 F.2d at 135. A review of this record does not present any evidence that Lay abdicated his responsibility in any way in this limited function.

Plaintiffs further request that liability be imposed against Lay personally for an alleged violation of § 1104 pursuant to 29 U.S.C. § 1109. Having found no breach of fiduciary duty on the part of Lay under § 1104, the court need not reach the question of personal liability under § 1109.[10]

---

**10.** Assuming that a breach of fiduciary duty under § 1104 existed, it is doubtful whether the imposition of personal liability pursuant to 29 U.S.C. § 1109 is appropriate here. Section 1109[a] reads in pertinent part:

[a] Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary....

■ As in the case of the other defendants, plaintiffs allege that Lay failed to provide timely and adequate information to them concerning the status of the plan, thus breaching the reporting duties pursuant to §§ 1021, 1023 and 1025. They request that damages be provided for the breach pursuant to § 1132[c]. As stated above, Lay operated on the assumption that he was not the administrator until being so informed by Kessler in the fall of 1982. At that time, he took upon himself the duties of distributing the pension plan information to his employers. Therefore, this court does not find that Lay intentionally violated the reporting requirements of ERISA. Since the record does not indicate that requests were made in writing by any of the plaintiffs pursuant to 29 U.S.C. § 1025, this court finds the relief requested by plaintiffs for imposition of a fine pursuant to § 1132[c] to be inappropriate.

### D.

■ Finally, in Count IV, plaintiffs allege that the defendants acted in a fraudulent manner toward them. The elements of fraud, which must be proved by a preponderance of the evidence, are: 1] a material misrepresentation of past or existing fact made with knowledge that the representation was untrue or recklessly made; 2] reliance on the representation by another party; 3] resulting in that party's acting to his detriment. *People's Trust & Savings Bank v. Humphrey*, —— Ind.App. ——, 451 N.E.2d 1104, 1112 [1983]; *South v. Colip*, —— Ind.App. ——, 437 N.E.2d 494, 498 [1982]; *Fleetwood Corp. v. Mirich*, —— Ind.App. ——, 404 N.E.2d 38, 42 [1980].

■ Plaintiffs allege that the July 1979 benefit display sheets stated as a fact the amount of pension benefits to be received by the drivers. Yet Kessler testified at trial that he clearly indicated to all in attendance at the meeting at which the benefit sheets were to be discussed that the year to year benefits were based on anticipated manual defined benefits through future Teamsters contract negotiations. As this court has stated in the discussion of ERISA violations, it finds Kessler to be a very credible witness, and, hence, finds that no misrepresentations of fact were made by him or by Bankers Life through him as its agent. No testimony was offered by the plaintiffs that Lay misrepresented any material fact to them during the bargaining sessions. Thus, the court finds the record devoid of this necessary element of fraud.

While there is no question that the plaintiffs relied on the representations made by Kessler,[11] the court is hard pressed to identify the detriment suffered by plaintiffs. By adopting the Bankers Life plan, the drivers received the same monthly payment as under the Teamsters Central States plan and better additional benefits with respect to vesting and retirement requirements and benefits to spouses upon retirement to name but a few.

Alternatively, plaintiffs suggest that this record supports a finding of constructive fraud. Plaintiffs rely on the holding of *Vernon Fire & Casualty Insurance Company v. Thatcher*, 152 Ind.App. 692, 285 N.E.2d 660 [1972] that a fraudulent purpose can be imputed to a person that makes an unqualified statement that a fact exists when that fact is shown not to exist and where the other elements of fraud are shown to be present. *Id.* 285 N.E.2d at 668–69. Having found that the July 1979 benefit statement was distributed with an oral qualification and that plaintiffs have incurred no appreciable detriment, the

---

The statute appears to suggest that the imposition of personal liability pursuant to § 1109 is proper when the breach of fiduciary responsibility involves the misuse of plan assets. This is not a case of an individual who has access to plan assets.

**11.** The court is highly skeptical of the charge of inducement leveled at the defendants. The July

1979 benefit display sheet was *prepared at the request of the plaintiffs;* but for this request, Kessler would not have initiated the preparation of such document. This record is devoid of any evidence of fraudulent intent on the part of any defendant to misrepresent any aspect of the Bankers Life plan.

1340

court concludes that the fraud count, under either actual or constructive fraud theories, must fail.

Accordingly, judgment shall enter against the plaintiffs and for the defendants with each side to bear their own costs. SO ORDERED.