Francis P. BROWN, etc., Plaintiffs,

v.

Lawrence ROTH, et al., Defendants.

Civ. A. No. 89–518.

United States District Court,
D. New Jersey.

Jan. 31, 1990.

**392**

Barry A. Kozyra, Walder, Sondak, Berkeley & Brogan, Roseland, N.J., for plaintiffs.

Christopher J. Bednarz, Voorhees & Acciavatti, Morristown, N.J., for defendant Roth.

Gerald T. Ford, Siff, Rosen & Parker, Newark, N.J., for defendants Lipman, Cestare & Selznick.

OPINION

WOLIN, District Judge.

This matter arises under the Employment Retirement Income Security Act ("ERISA" or "the Act"), 29 U.S.C. § 1001, *et seq.* and requires the Court to probe the definitional boundaries of that shadowy figure, the "fiduciary." Plaintiff Francis P. Brown, as trustee and beneficiary on behalf of Alpha Profit Sharing Trust ("the Trust") has filed suit against Lawrence Roth, a certified public accountant, and the accounting firm of Lipman, Cestare & Selznick ("LCS"), alleging negligence (Count One), professional malpractice (Count Two) and breach of fiduciary duties to the Trust (Counts Three through Six). Defendant Roth now moves for summary judgment dismissing the complaint and all claims, or in the alternative for dismissal of plaintiff's claims for punitive and/or treble damages; defendant LCS joins in defendant Roth's motion and alternatively seeks dismissal of the state law claims, the striking of the jury trial demand and dismissal of the punitive damages claim.

For the reasons that follow, the Court finds that defendant Roth is not a fiduciary under ERISA and is therefore not subject to suit under that statute. The Court further finds that the connection between LCS and Roth is insufficient to render LCS liable, under any legal theory, for the acts of Roth. Thus, the federal claims against both defendants will be dismissed with prejudice. The Court declines to accept jurisdiction over the pendent state claims and will dismiss them without prejudice for lack of subject matter jurisdiction.

I. BACKGROUND

The facts not in dispute are as follows: from January, 1980 until August 9, 1987 Lawrence Roth was the certified public accountant for Alpha Aviation Insurance Agency ("Alpha"). Francis P. Brown is the president of Alpha and a Trustee and beneficiary of the Trust. In 1984 Roth and Brown discussed the creation of a profit sharing/retirement plan for Alpha's employees. Subsequently, Brown retained EPB Pension Consultants to draft a suitable plan and the Trust was created. Brown and Eugene Duflo were named Trustees of the Trust.

The Trustees initially placed the assets of the Trust in a non-interest bearing account. Roth suggested a transfer of the assets to a money market account. When requested to supply the name of a broker for such a transaction, Roth recommended his broker at Smith Barney, a national brokerage firm.

In late 1986, Roth explored the possibility of purchasing second mortgages as a personal investment and decided to invest with Michael Clott. During a subsequent discussion Roth told Brown of his investment decision and Brown decided to make a similar investment as Trustee on behalf of the Trust. Although Brown initially wanted to invest all the Trust monies, $50,000, Roth convinced the Trustee to limit the investment to $25,000. In January of 1987, Brown issued a check from the Smith Barney account payable to the Rockwood Insurance Company and forwarded the check to Roth for delivery to Clott. One month later, Roth called Brown to inform him that the mortgages had "matured" and to request further instructions. Brown Certif., ¶ 16. After a discussion of Roth's decision to "roll over" his personal investment, Brown told "Roth to do the same thing with the Trust's money." *Id.*

During April, 1987, Roth discovered that his and the Trust's investments in Clott's second mortgages were worthless and furthermore that Clott, principal of the fraudulent investment scheme, had been arrested and was in custody. On February 9, 1989 Brown filed the current complaint against Roth and LCS alleging, among other things, breaches of fiduciary duty.

## II. DISCUSSION

ERISA was enacted to "protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." 29 U.S.C. § 1001(b) (1982). The statute provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109 imposes personal liability on fiduciaries for breaches of their fiduciary duty.[1] ERISA defines "fiduciary" in section 1002(21):

> (A) Except as otherwise provided in subparagraph (B) [addressing plan assets invested in securities issued by an investment company registered under 15 .U.S.C. § 80a–1 *et seq.*], a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has discretionary authority or discretionary responsibility in the administration of such a plan. Such term includes any person designated under section 1105(c)(1)(B) [2] of this title.

29 U.S.C. § 1002(21)(A).

The following oft-quoted legislative history sheds light on the meaning of this provision:

> Under this definition, fiduciaries include officers and directors of a plan, members of a plan's investment committee and persons who select these individuals. Consequently, the definition includes persons who have authority and

**1.** Section 1109 states:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

> (b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

**2.** Section 1105(c)(1) states that "[t]he instrument under which a plan is maintained may expressly provide for procedures ... (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan."

responsibility with respect to the matter in question, regardless of their formal title. The term "fiduciary" also includes any person who renders investment advice for a fee and includes persons to whom "discretionary" duties have been delegated by named fiduciaries.

While the ordinary functions of consultants and advisers to employee benefit plans (other than investment advisers) may not be considered as fiduciary functions, it must be recognized that there will be situations where such consultants and advisers may because of their special expertise, in effect, be exercising discretionary authority or control with respect to the management or administration of such plan or some authority or control regarding its assets. In such cases, they are to be regarded as having assumed fiduciary obligations within the meaning of the applicable definition.

H.R.Cong.Rep. No. 1280, 93d Cong., 2d Sess. 323, *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 5038, 5103.

### A. *Fiduciary Analysis as to Defendant Roth*

Plaintiff urges the Court to hold that Roth is a fiduciary under either of two theories: first, that Roth is a fiduciary under section 1002(21)(A)(i), and (iii), because he exercised discretionary authority, control and responsibility over the Trust, and secondly, that he is a fiduciary under section 1002(21)(A)(ii) because he rendered investment advice to the Trust and was indirectly compensated, or because he has the authority or responsibility to render such advice. The Court will analyze each theory separately.

### 1. *Authority and Control Under § 1002(21)(A)(i), (iii)*

■ Under plaintiff's first theory, Roth allegedly provided tax, financial and invest-

ment advice to Brown; Brown, in reliance upon that advice, invested the Trust assets in a now worthless enterprise. Distilled to its essence, plaintiff's argument is that Roth exercised discretionary authority, control and responsibility over the Trust indirectly through Brown who did not exercise his own discretion and authority without the imprimatur of Roth.

It is undisputed that any discretion exercised by Roth arose through his dealings with Brown from his position as Alpha's accountant, not from his status as a "named" fiduciary under 29 U.S.C. § 1102(a). Complt., ¶¶ 56–58. Roth was not designated under authority of section 1105(c)(1)(B) and Trust Art. XII § 20, to carry out fiduciary responsibilities of the Trust. Thus, the question before the Court is whether Roth performed any function beyond his role as accountant, for the Third Circuit has clearly indicated, "accountants, attorneys, and other outside consultants [are] to be treated as plan fiduciaries only if they go beyond their normal roles and assume management or administrative responsibilities." *Painters of Philadelphia District Council v. Price Waterhouse*, 879 F.2d 1146, 1150 (3d Cir.1989).

Under this functional approach the Court's examination of Roth's duty to the retirement plan is guided by principles established by the Department of Labor ("the Department"), the agency charged by statute with the interpretation of ERISA.[3] The Court accords substantial deference to its views. *National Freight, Inc. v. Larson*, 760 F.2d 499, 505 (3d Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 227 (1985).

The Department regulations provide an example of an accountant rendering actuarial or consulting advice to a plan. The regulations indicate that absent a showing

---

**3.** Section 1135 provides in relevant part:

Subject to subchapter II of this chapter [addressing jurisdiction, administration, enforcement, and joint pension task forces] and section 1029 of this title [addressing criminal proceedings], the Secretary may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter. Among other things, such regulations may define accounting, technical and trade terms used in such provisions....

29 U.S.C. § 1135. *See also Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 143 n. 11, 105 S.Ct. 3085, 3091 n. 11, 87 L.Ed.2d 96 ("The Secretary's rulemaking power is contained in § 505, 88 Stat. 894, 29 U.S.C. § 1135.")

of "control respecting the management of the plan," or the "plan's assets," investment advice for a fee, or "discretionary responsibility in the administration of the Plan," an accountant is not a fiduciary.[4] *See also* Interpretive Bulletin 75–8, 29 C.F.R. § 2509.75–8 (1988) (persons who have no power to make any decision as to plan policy, interpretation, practices or procedures but who perform purely ministerial duties such as making recommendations to others for decisions with respect to plan administration are not fiduciaries; a named fiduciary may not delegate responsibility for management and control of plan assets to any one other than an investment manager as defined in section 1002(38)).

Consistent with the functional analysis of Department regulations, the Third Circuit in *Painters* assessed the accountants' alleged discretionary authority and responsibility with respect to any disposition of fund assets and to the administration of day-to-day affairs of the Fund. Noting that the accountants had no authority to sign checks, to pass on the validity of claims against the Fund, or to implement plan policy with respect to investments, benefits, or personnel, the Court determined that the accountants did not exercise sufficient authority or responsibility with respect to the fund assets to be considered fiduciaries under the plan. 879 F.2d at 1150.

In the absence of evidence that Roth ever had authority to sign the Trust's checks, pass on the validity of claims against the Trust, or to implement plan policy, plaintiff would have this Court find that Roth maintained indirect decision-making authority with respect to the affairs of the plan because of his alleged influence on Brown. This the Court cannot do. After scrutinizing the allegations against Roth, the Court is satisfied that Roth did not wield undue influence over Brown or that he used his influence to direct Brown in a manner to serve himself.[5]

The allegations pertinent to the Court's analysis, culled from Brown's affidavit are that Roth: recommended that Alpha establish a pension plan; arranged for EPB Consulting to draft the plan; instructed Alpha to open a Smith Barney account for the Trust (Complt., ¶ 4); called and stated that he was looking at second mortgages as an investment opportunity for himself (¶ 5); told Brown that he would send him an investor's package on the second mortgages (¶ 9); cautioned him to invest only half of the Trust monies rather than the entire amount as proposed by Brown (¶ 12); received from Brown a check from the Smith Barney account payable to Rockwood In-

---

4. 29 C.F.R. § 2509.75–5 (1986) provides in relevant part:

D–1 Q: Is an attorney, accountant, actuary or consultant who renders legal accounting, actuarial or consulting services to an employee benefit plan (other than an investment adviser to the plan) a fiduciary to the plan solely by virtue of the rendering of such services, absent a showing that such consultant (a) exercises discretionary authority or discretionary control respecting the management of the plan, (b) exercises authority or control respecting management or disposition of the plan's assets, (c) renders investment advice for a fee, direct or indirect, with respect to the assets of the plan or has authority or responsibility to do so, or (d) has any discretionary authority or discretionary responsibility in the administration of the plan?

A. No. However, while attorneys, accountants, actuaries and consultants performing their usual professional functions will ordinarily not be considered fiduciaries, if the factual situation in a particular case falls within one of the categories described in classes (a) through (d) of this question, such persons would be considered to be fiduciaries within the meaning of section 3(21) of the Act.

5. Although neither party directed the Court to a case presenting a constructive "fiduciary" by influence, the Court takes guidance from *Brock v. Hendershott*, 840 F.2d 339 (6th Cir.1988), a case presenting allegations similar to those in the present matter. In *Brock*, the Court found Ohio's highest ranking union official to be a fiduciary within the terms of ERISA. The Court determined that the official in question had used his influence over the union's local bargaining units to demand that they select a certain dental program in which he had ownership interest. Here, in contrast, Roth made no demands on Brown concerning any plan administration or disposition of plan assets, he merely "suggested," or "offered," or disclosed to Brown his personal investment decisions. Moreover, Roth never profited as a result of any alleged influence.

surance Company for Roth to "secure the investment in the second mortgages" (¶ 13); and called to inform Brown that the second mortgages had matured and that he awaited further instructions (¶ 16).

In this summary judgment motion the Court is required to make all reasonable inferences in favor of the non-moving party. The non-movant, however, must come forward with specific facts which establish the existence of a triable issue. Fed.R. Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Court concludes under these standards that no genuine issue of material fact is present.

Considering only the extra-accountancy functions allegedly performed by Roth and leaving the issue of providing investment advice for subsequent discussion, the Court finds the functions performed by Roth well within the professional role of an accountant. For example, forwarding an investor's packet on the second mortgages at Brown's request is not outside the realm of accountancy (¶ 9), nor is forwarding a check from the Trust assets to the particular investment vehicle chosen by the Trustee (¶ 13). In fact, calling the Trustee when an investment has matured and requesting further instructions is exactly what is expected from an accountant (¶ 16). *Cf. Nieto v. Ecker*, 845 F.2d 868, 870–71 (9th Cir. 1988) (where attorney's failure to collect employer contributions and resultant dissipation of plan assets did not constitute effective control over plan assets, and was not the exercise of authority over the plan in a manner other than by usual professional functions; hence attorney was not a fiduciary within the meaning of ERISA); *Yeseta v. Baima*, 837 F.2d 380 (9th Cir. 1988) (attorney's review of plan and its compliance with the law, coupled with counseling others in making withdrawals from the plan, does not show he controlled the Plan in a manner other than by usual professional functions); *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250 (2d Cir.1987) (attorney who negotiated contracts with the plan administrator, but who had no authority to set the administrator's fee, was not a fiduciary).

With respect to the allegations of influence, the mere fact that Roth suggested Brown transfer the Trust assets from a non-interest bearing account to one paying interest, and that Brown subsequently did transfer the assets, does not establish influence. To presume Brown's transfer of funds resulted solely from Roth's influence is to presume that Brown is without general business acumen. The Court is unprepared to leap to the conclusion suggested by plaintiff in light of Brown's years of experience as President of Alpha. Moreover, the Court notes that special expertise is not required to recognize that a financial position is improved by earning interest on an investment.

### 2. *Investment Advice under § 1002(21)(A)(ii)*

■ Plaintiff also contends that defendant is a fiduciary under ERISA because he was indirectly paid for investment advice rendered to the Trust or because he had authority or responsibility to render investment advice. The Court holds that the services provided by Roth do not render him a fiduciary of the plan for two reasons. First, the limited authority exercised by Roth over plan assets and plan administration does not make him a fiduciary. Second, if he did give investment advice, it was not on a regular basis pursuant to a mutual agreement or understanding that such services would serve as the primary basis for investment decisions with respect to the plan assets.

Perusal of the investment advice purportedly given by Roth to the Trust (See Certification of Francis P. Brown, ¶¶ 4–7, 9, 12, 16) supports the Court's conclusions. The Court's analysis is also supported by Department regulations which provide:

A person shall be deemed to be rendering "investment advice" to an employee benefit plan, within the meaning of section 3(21)(A)(ii) of the Employee Retirement Income Security Act of 1974 (the Act) and this paragraph, only if:

(i) Such person renders advice to the plan as to the value of securities or other

property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and

(ii) Such person either directly or indirectly (e.g., through or together with any affiliate)—

(A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or

(B) Renders any advice described in paragraph (c)(1)(i) of this section on a regular basis to the plan pursuant to a mutual agreement, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3–21(c)(1) (1987). Applying this regulation to Roth's activities, assuming that he gave investment advice as to the money market account and the secondary mortgages, such advice does not make him a fiduciary. He had no "discretionary authority or control with respect to purchasing or selling securities" for the Trust, 29 C.F.R. § 2510.3–21(c)(1)(ii)(A) (1987), nor did he render advice "on a regular basis," 29 C.F.R. § 2510.3–21(c)(1)(ii)(B) (1987).

---

**6.** Plaintiff confuses Roth's longstanding relationship with Alpha/Brown with his short "relationship" with the Trust. Def. Mem. at 13. Even if the Court were to assume that Roth provided regular advice to Alpha "as to whether we were investing our surplus cash in the right kind of account" (Brown Cert. at ¶ 3) plaintiff has presented no factual basis indicating an agreement to provide regular investment advice to the Trust. Roth never claimed to have a securities license, nor held himself out as an investment advisor or investment analyst.

In the absence of a mutual agreement or understanding between the parties that Roth's advice would be the primary basis for the Trust's investing decisions and making all reasonable inferences in favor of Brown, the non-moving party, the Court finds that Roth's provision of advice on two occasions is too infrequent to raise the inference that advice was provided on a regular basis to the Trust.[6] Plaintiff has failed to carry its burden of coming forward with specific facts to indicate that Roth provided individualized investment advice to the Trust. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552. *See* 29 C.F.R. § 2510–21(c)(1)(ii)(B). Moreover, a mere proposal of a possible investment does not show any authority to exercise control unilaterally over a portion of the Trust's assets. *See Farm King Supply, Inc. v. Edward D. Jones & Co.*, 884 F.2d 288, 292 (7th Cir.1989) (citing cases); *see also, Anoka Orthopedic Assocs. v. Mutschler*, 709 F.Supp. 1475 (D.Minn.1989) (attorney who designed the plan; formulated plan specifications; prepared investment review and on one occasion gave investment advice was not a fiduciary under ERISA).

Plaintiff's reliance on *Miller v. Lay Trucking Co.*, 606 F.Supp. 1326 (N.D.Ind. 1985) is misplaced. There, the court found that an insurance agent effectively controlled the plan's management because,

[he] was *solely* responsible for formulating the specifications of the proposed Bankers Life Plan which were then sent to another Bankers Life official, Richard Clark. [He] gave investment and other advice to Lay regarding the Bankers Life plan. Moreover, he prepared benefit reports for participants in the program and proposed reports for the PBGC [Pension

---

Brown Dep., 60–18 to 61–4. Moreover, the Trust did not pay Roth for investment advice. Brown Dep., 76–11 to 77–24. The only mention of payment for investment advice is an allegation contained in Brown's Certification at paragraph 3, however, mere allegations are insufficient to withstand summary judgment. Even the expert retained by plaintiff testified that he reviewed no documentary evidence indicating that Roth was indirectly or directly paid for providing investment advice. Catanio Dep., 23–21 to 25–2.

Benefit Guarantee Corporation] listing himself as administrator. 606 F.Supp. at 1334–35. In this case, there are absolutely no allegations or facts to support an assertion that Roth was *solely* responsible for any aspect of the Trust's administration. *See also, Dardaganis v. Grace Capital, Inc.,* 889 F.2d 1237 (2d Cir. 1989) (determination that defendant, president, CEO and principal shareholder of a registered investment advisor, was a fiduciary under ERISA because he was *solely* responsible for supervising and managing the fund's portfolio investment). Moreover, Roth never held himself out as any administrator or "investment advisor" under 29 U.S.C. § 1102(c)(2) or (c)(3). His contact with the Trust through Brown shows none of the discretionary authority demonstrated by the insurance agent in *Miller* or the CEO in *Dardaganis.*

For the reasons stated, the Court will grant Roth's motion for summary judgment as to all federal claims.

### B. *The Derivative Claims Against LCS*

■ Although plaintiff's opposition papers state, "[a]ll factual allegations as to Roth are meant to apply to LC & S; each of their legal positions will be addressed individually" (Pltf. Mem., 1 n. 1), plaintiff never squarely addresses the alleged liability of LCS. For all practical purposes, defendant LCS' motion for summary judgment is unopposed.

At oral argument, however, counsel for plaintiff claimed that defendant LCS is liable under the theory of respondeat superior. LCS asserts that "Roth was [never] an employee or a member of the firm. In fact, Roth was a solo practitioner who merely sublet office space from LCS." Def. LCS Mem., 1. In this summary judgment motion, plaintiff bears the burden of providing specific facts which establish the existence of a triable issue of material fact. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Plaintiff has failed to offer the specific facts necessary to withstand sum-

mary judgment on this issue. Moreover, because LCS' liability is predicated on that of Roth and the Court has already determined that Roth is not a fiduciary under ERISA, the federal claims against LCS will be dismissed with prejudice.

Because the Court finds that plaintiff's federal claims cannot withstand defendants' summary judgment motion, it is unnecessary and improvident for this Court to exercise pendent jurisdiction over plaintiff's state law claims. See *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Tully Supermarkets, Inc. v. Mott,* 540 F.2d 187, 196 (3d Cir.1976).[7]

### III. CONCLUSION

For the reasons set forth above, the Court will grant summary judgment for defendants on plaintiff's ERISA claims and will dismiss plaintiff's state law claims for lack of jurisdiction.

---

**7.** In light of the Court's decision to enter a dismissal with prejudice as to plaintiff's federal claims and a dismissal without prejudice as to the state law claims, the Court need not reach the issue of punitive damages.