Robert E. O'GRADY, et al., Plaintiffs,

v.

**FIRESTONE TIRE & RUBBER CO.,**
Dayton Tire & Rubber Company
Division, Defendant.

No. C–3–85–65.

United States District Court,
S.D. Ohio, W.D.

March 14, 1986.

Stephen E. Klein, Vandalia, Ohio, for plaintiffs.

David P. Hiller, Thomas D. Rooney, Columbus, Ohio, James P. Wilkins, Akron, Ohio, for defendant.

DECISION AND ENTRY OVERRULING IN PART AND SUSTAINING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 12) AND OVERRULING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOC. # 15)

RICE, District Judge.

This case is before the Court on Motions for Summary Judgment by the Defendant

(Doc. # 12) and the Plaintiffs (Doc. # 15). For the reasons set forth below, the Court finds that genuine issues as to material facts remain in this case. Accordingly, the Plaintiffs' Motion for Summary Judgment is overruled. The Defendant's Motion for Summary Judgment is sustained in part and overruled in part.

## I. *Factual Background*

Plaintiff Robert E. O'Grady was employed by the Dayton Tire and Rubber Company Division of the Firestone Tire and Rubber Company from approximately 1971 until he was laid off as a result of plant closure on September 19, 1980. Mr. O'Grady was a member of the bargaining unit represented by United Rubberworkers Local 178, which negotiated the terms and conditions of his employment set forth in the collective bargaining agreement dated February 1, 1977 between the Dayton Tire and Rubber Company and the Union. (Exhibit 4 attached to Doc. # 12). Hourly employees represented by the Union were also covered by the Pension and Insurance Agreement for Hourly-Rated Employees dated July 20, 1976 (the "Pension and Insurance Agreement") (Exhibit 2 attached to Doc. # 12), which was also negotiated by the Company and the Union.

Under the terms of the Pension and Insurance Agreement, an employee's medical expense benefits coverage was to cease upon termination of employment. However, pursuant to an agreement between the Company and the Union, all employees, including Plaintiff Robert O'Grady, who were laid off as a result of the closure of the Dayton plant continued to receive medical expense benefits for two years following their termination. This coverage expired on September 19, 1982. Under the Pension and Insurance Agreement, former employees had the option of converting to individual coverage upon termination of group coverage, provided the application for conversion is made within thirty-one (31) days of the termination of coverage. Specifically, the Pension and Insurance Agreement provides:

Conversion Privilege. If an employee's and/or his eligible dependants' coverage terminates as provided under this Article 2, such individuals will be entitled to convert to an individual hospital and surgical expense insurance policy without a medical examination, provided application is made within thirty-one (31) days of such termination of coverage under Article 2.

(Exhibit 2 attached to Doc. # 12 at 70). Similarly, the summary plan description provided:

(d) Conversion—an individual health insurance policy for yourself and dependants can be acquired in the event that coverage under this program ends. Application must be made within thirty-one (31) days from the date coverage ends and no physical examination is required.

(Exhibit 1 attached to Doc. # 12, at 18).

The medical expenses from which this claim arises were incurred on and after October 6, 1982 for surgery on Plaintiff's minor daughter to correct a cleft palate. This surgery was originally scheduled for September 19, 1982, but had to be postponed due to the unavailability of several doctors. Plaintiffs allege that in a conversation between Patricia J. O'Grady and Candy Kelly, an employee of the Group Benefits Department of Firestone Tire and Rubber Company, they were told there would be a thirty-one day extension of coverage during the conversion period. Plaintiffs' claim that in reliance upon this representation, they rescheduled the surgery for October 6, 1982. Immediately following the surgery on October 6, 1982, the business office at Good Samaritan Hospital, where the surgery was performed, submitted a claim to Firestone on behalf of the Plaintiffs and was informed that Plaintiffs' coverage had terminated on September 19, 1982. The Plaintiffs thereupon submitted the necessary conversion papers along with a $495 premium payment to the Prudential Insurance Company of America, and, as provided under the Pension and Insurance Agreement, automatically became covered under the individual policy of insurance

with Prudential. That policy covered a total of $2,362.50 of the $12,744 in medical expenses. Plaintiffs now seek to recover the balance of their expenses from the Defendant.

## II. *Preemption of Equitable Estoppel by ERISA*

In its Motion for Summary Judgment, Defendant argues that each and every one of Plaintiffs' claims is preempted by the Employment Retirement and Security Act of 1974. Plaintiffs concede that, with the exception of Count Two of their Complaint, their claims must be reviewed in light of the requirements set forth under ERISA. *See* Doc. # 15 at 1. However, Plaintiffs argue that Count Two of their Complaint states a claim under the theory of equitable estoppel and is not preempted by ERISA. For the reasons set forth below, the Court concludes that Plaintiffs' equitable estoppel claim is preempted by ERISA and, accordingly, that it along with Plaintiffs' other claims must be reviewed in light of ERISA standards.

ERISA's preemption section is found at 29 U.S.C. § 1144(a), which provides:

Except as provided in Subsection (b) of this section, the provisions of this title and Title IV shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 4(a) [29 U.S.C. § 1003(a)] and not exempt under Section 4(b) [29 U.S.C. § 1103(b)].

In *Shaw v. Delta Airlines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court examined the scope of 29 U.S.C. § 1144(a). Based upon an examination of the legislative history of ERISA, the Court held that preemption under Section 1144(a) must be interpreted very broadly:

In fact, however, Congress used the words "relate to" in § 514(a) [29 U.S.C. § 1144(a)] in their broad sense. To interpret § 514(a) to preempt only state laws specifically designed to affect employee benefit plans would be to ignore the remainder of § 514. It would have been unnecessary to exempt generally applicable state criminal statutes from preemption in § 514(b) [29 U.S.C. § 1144(b)], for example, if § 514(a) applied only to state laws dealing specifically with ERISA plans.

*Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900. The Court went on to state: "Congress applied the principles of preemption 'in its broadest sense to foreclose any non-federal regulation of employee benefit plans' creating only very limited exceptions to preemption." *Id.* at 104, 103 S.Ct. at 2903 (quoting 120 Cong.Rec. 29197 (1974) (remarks of Rep. Dent)). *See also Metropolitan Life Insurance v. Massachusetts*, —— U.S. ——, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (reaffirming broad preemption of state law in non-exempt areas); *Authier v. Ginsberg*, 757 F.2d 796 (6th Cir.1985) (finding Michigan's common law cause of action for discharge in contravention of public policy preempted by ERISA).

In the present case, the Court must determine whether the doctrine of equitable estoppel as raised by the second count of Plaintiffs' Complaint is related to the pension plan in question. The Court first notes in determining whether the equitable estoppel claim is related to the ERISA pension plan that the benefits Plaintiffs seek to obtain are those payable under the ERISA plan. The Court further notes that the equitable estoppel claim turns upon Defendant's fiduciary duties under ERISA. It is only because of Firestone's position as the fiduciary of Plaintiffs' ERISA plan that Plaintiffs could have relied on the Defendant's agent's alleged misrepresentations. Were the Defendant not the fiduciary of the ERISA plan, Plaintiffs' reliance upon the agent's representations would have been so unreasonable as not to create an equitable estoppel claim. Therefore, the Court concludes that Plaintiffs' claim based upon equitable estoppel is preempted by ERISA.

This finding that Plaintiffs' claim is preempted by ERISA, however, does not mean that the facts underlying Plaintiffs' equitable estoppel claim do not serve as a basis for an ERISA claim. Rather, pre-

emption of the doctrine of equitable estoppel by ERISA in these circumstances means that the Court can only review the fiduciary's alleged misrepresentation under an arbitrary and capricious standard of review. A fiduciary has the duty of administration of the plan as well as the duty of interpretation that is reviewable under the arbitrary and capricious standard. *See Moore v. Reynolds Metals Company Retirement Program for Salaried Employees,* 740 F.2d 454, 457 (6th Cir.1984). Given the Court's power to review a plan's administration under the arbitrary and capricious standard, the facts which constitute a claim under the doctrine of equitable estoppel, *i.e.,* a false representation of material facts, made with the expectation that such conduct would be acted upon by Plaintiffs and which causes detrimental consequences to the Plaintiffs, could serve as a basis for a cause of action under ERISA. In *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091 (9th Cir.1985), the court applied such an arbitrary and capricious standard of review under ERISA to the plaintiff's equitable estoppel claims.

In sum, Plaintiffs' claims brought directly under the common law of equitable estoppel are preempted by ERISA. However, under ERISA, a claim may be brought for arbitrary and capricious administration of a plan under facts which would support a common law claim of equitable estoppel.

### III.  *Exhaustion*

Before the merits of Plaintiffs' claims are addressed, the Court must consider Defendant's argument that Plaintiffs' claims are barred by Plaintiffs' failure to exhaust their administrative remedies under the benefits plan. The Court first notes that the requirement of exhaustion, while not explicitly found in 29 U.S.C. § 1133, has been implied as a prerequisite to an ERISA benefits claim by the courts which have considered the issue. *See Mason v. Continental Group, Inc.,* 763 F.2d 1219 (11th Cir.1985); *Kross v. Western Electric Co.,*

701 F.2d 1238 (7th Cir.1983); *Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980).

However, the Court finds that the specific facts of this case indicate that a genuine issue of material fact exists as to whether the Defendant has waived its defense of exhaustion. The facts, as presently developed in the case, indicate that the Plaintiffs made their claim under the benefits plan through Good Samaritan Hospital at the time of the surgery upon their daughter. Good Samaritan Hospital then received notification that Plaintiffs' claims under the plan had been denied. Neither party has indicated that the Plaintiffs at this time received direct notification of the denial of their claim from the Defendant.

The Summary Plan Description (Exhibit 1 to Doc. # 12) provides at p. 45: "If your claim for a benefit is denied in whole or in part, you must receive a written explanation of the reason for denial. You have a right to have the plan review and reconsider your claim." The Summary also indicates at p. 22: "When a claim for benefits is denied, you will be given in writing the specific reasons for the denial, references to relevant plan provisions on which the denial is based, and an explanation of the plan's claim review procedure."

As indicated above, Defendant has provided no evidence that at the time of its denial of Plaintiffs' claim it gave Plaintiffs the written notice required by the plan. In failing to provide such a written denial, the Defendant did not give the Plaintiffs an explanation of the review procedures they were expected to exhaust before bringing this suit. Further, in the letter of Mr. N.R. Bahr to the Ohio Department of Insurance investigator Katynski (Exhibit C to Doc. # 17), the Defendant, through its agent, again failed to outline Plaintiffs' available review procedures. The depositions and affidavits of the Plaintiffs indicate that during this time period, they did not stand idly by. Mrs. O'Grady contacted the Union and the Ohio Department of Insurance to try to determine her remedies. Given the apparent lack of specific notice of the Plaintiffs' administrative review proce-

dures (because of the failure of Defendant to provide a written denial of benefits to the Plaintiffs), the Court finds that genuine issues exist as to whether the Defendant has waived the defense of exhaustion. Accordingly, summary judgment cannot be granted on the issue of exhaustion.

### IV. *Arbitrary and Capricious Review*

As construed by this Court, Plaintiffs' Complaint seeks review of the Defendant's *interpretation* and *administration* of the benefit plan.

In reviewing the Defendant's interpretation of the benefit plan, the Court must conclude that that *interpretation* is not arbitrary and capricious and, therefore, grant summary judgment on that issue in favor of the Defendant. In construing the "conversion clause," the Defendant has found that Plaintiffs' coverage was to cease on September 19, 1982. In light of the language of that clause as found in the pension plan and the summary description of benefits, the Court concludes that such an interpretation is reasonable and therefore not arbitrary and capricious. Accordingly, Defendant's Motion for Summary Judgment as to its *interpretation* of the benefits plan is sustained.

On the other hand, the Court finds that genuine issues as to material fact exist as to whether the Defendant's *administration* of the benefits plan was arbitrary and capricious. As noted above, the Court has found that a claim under ERISA may be based upon arbitrary and capricious administration of a plan. *See Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096–97 (9th Cir.1985); *Moore v. Reynolds Metals Company Retirement Program for Salaried Employees*, 740 F.2d 454, 457 (6th Cir.1984). In this case, genuine issues exist as to whether any agent of the Defendant made any misrepresentations regarding the plan's coverage in the conversion period to the Plaintiffs and if so, what misrepresentations were made. Accordingly, both the Plaintiffs' Motion for Summary Judgment and the Defendant's Motion as it relates to administration of the plan must be overruled.

Plaintiffs have also moved for summary judgment, arguing that the evidence conclusively supports their claims that they need not have exhausted their contractual remedies, that the Defendant is equitably estopped from claiming their daughter's surgery was not covered by the Plan and that the Defendant's interpretation and administration of the Pension Plan was arbitrary and capricious. The Court has already noted that genuine issues of material fact exist as to whether Defendant has waived its exhaustion defense and as to whether its administration of the Plan was arbitrary and capricious. The Court has also found that Plaintiffs' equitable estoppel claim fails to state a claim upon which relief can be granted and that Defendant's interpretation of the Plan was not, as a matter of law, arbitrary and capricious. For those reasons, Plaintiffs' Motion for Summary Judgment (Doc. #15) is overruled.

In sum, Defendant's Motion for Summary Judgment is granted on the issue of the Defendant's interpretation of the benefits plan. The remainder of Defendant's Motion for Summary Judgment and the Plaintiffs' Motion for Summary Judgment are overruled.