**Joseph J. FLACCHE and Ella M. Flacche, Plaintiffs–Appellants,**

v.

**SUN LIFE ASSURANCE COMPANY OF CANADA (U.S.), Defendant–Appellee.**

No. 91–3462.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1992.

Decided March 11, 1992.

Kenneth Andrew Gamble, Theodore F. Claypoole (argued and briefed), Gamble, Hartshorn & Alden, Columbus, Ohio, for plaintiffs-appellants.

Charles H. Walker (briefed), Catherine M. Ballard (argued and briefed), Bricker & Eckler, Columbus, Ohio, for defendants-appellees.

Before KENNEDY and JONES, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Plaintiffs, Joseph and Ella Flacche, appeal from the district court's grant of summary judgment in favor of Defendant, Sun Life Assurance Company of Canada ("Sun Life"), in this ERISA action. The Flacches

assert a claim for greater pension benefits under a plan funded by an annuity contract sold by Sun Life. For the following reasons, we affirm the decision of the district court.

## I

Joseph Flacche worked for SCOA Industries, Inc. ("SCOA") from 1944, when he began as a stock boy, until June of 1986, when he retired as a Senior Vice President. He participated in SCOA's employee pension and retirement plan (the "plan"), and he met the eligibility requirements for early retirement benefits. If her husband were to predecease her, Mrs. Flacche would qualify for a residual benefit.

In March of 1986, Tishkoff Enterprises ("Tishkoff") acquired SCOA, which subsequently did business as Shoe Corporation of America.[1] On March 13, 1986, Flacche notified SCOA of his intention to take early retirement. On April 29, however, he withdrew his request for early retirement. The withdrawal was short lived. On May 22, Flacche again advised SCOA of his intention to take early retirement, effective June 1, 1986. SCOA informed Flacche, by letter of June 18, 1986, that his retirement income would be $2,861 per month. Flacche retired from SCOA effective June 1, 1986, but he accepted employment with the parent corporation, Tishkoff, where he worked until January 21, 1988.

Flacche began receiving pension benefits effective June 1, 1986. The payments at that time were sent by Irving Trust, which distributed the funds at the direction of SCOA. Instead of receiving payments in the amount of $2,861, as SCOA had indicated he would receive, however, Flacche began receiving monthly payments in the amount of $3,959.

During May of 1986, SCOA agreed to purchase a single-premium, group annuity contract from Sun Life to pay the pension plan benefits due SCOA's former employees. In October of 1986, Sun Life began the payment of the monthly benefits, a task previously performed by Irving Trust. From the base amount of $3,959, which figure Irving Trust provided and SCOA's Employee Retirement Plan Committee approved, Sun Life calculated a monthly bonus of $887 due Flacche, for a total monthly benefit of $4,846.[2] Sun Life, at that time, issued to Flacche a "Summary of Benefits Certificate," which reflected the $4,846 figure. One month later, Flacche's bonus benefit was reduced to $470.94 to reflect his early retirement (for a total monthly benefit of $4,429.94).[3] Sun Life advised Flacche of this change.

Sun Life then began the reconciliation and collation of data concerning the over three thousand former SCOA employees covered by the plan. During October of 1988, it discovered that, although it had adjusted Flacche's bonus amount, his base benefit was incorrect. Sun Life contacted SCOA's successor, Hills, which directed Sun Life to reduce Flacche's future benefit payments accordingly. The corrected total for the monthly base benefit and monthly bonus amounted to $3,312.74,[4] to which Sun Life reduced Flacche's monthly checks effective January 1, 1989.

In the meantime, Flacche had retired from his position at Tishkoff on January 31, 1988. At that time, Flacche had been receiving $4,429.94 per month from Sun Life for over a year. Flacche claims that he relied on the $4,429.94 benefit amount in making his decision to retire from Tishkoff. He claims that he retired because the $4,429.94 sufficiently sustained his family's quality of life.

---

1. Shoe Corporation of America later changed its name to Hills Stores Company ("Hills"). Hills eventually filed for bankruptcy, and on February 21, 1991, the district court stayed the Flacches' action with regard to that defendant.

2. The funds for the bonus benefit apparently came from surplus funds held by the plan.

3. Understandably, though Flacche does not deny that these were overpayments, he never questioned the propriety of the increased payments. Apparently, neither Sun Life nor the plan has attempted to collect the overpayments, which total over $30,000.

4. This is approximately the same as the original calculation ($2,861) plus the adjusted bonus calculation ($470.94).

After receiving notice that his monthly benefits would be reduced from $4,429.94 to $3,312.74, Flacche filed an action in the Court of Common Pleas of Franklin County, Ohio. He asserted state law claims of breach of contract and promissory estoppel against Sun Life. Sun Life removed the case, based on diversity, to federal district court. Sun Life then filed a third-party complaint naming Tishkoff and Hills as third-party defendants. The parties subsequently agreed to the dismissal of Tishkoff. On July 26, 1990, the district court denied Flacche's motion for summary judgment and granted Sun Life's motion for summary judgment. It held that Flacche's claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. §§ 1001 *et seq.* Mr. Flacche did not appeal that holding, but, adding his wife as a plaintiff, he obtained leave to file amended complaints asserting claims under ERISA.

On August 7, 1990, Flacche filed a first amended complaint, asserting claims on behalf of his wife and himself, against Sun Life and Hills, for breach of fiduciary duty under ERISA. The Flacches later filed a second amended complaint, repeating the breach of fiduciary duty claims in Counts One and Two and asserting promissory estoppel claims in Counts Three and Four, also under ERISA. On February 21, 1991, the district court stayed this action with regard to Hills, which had filed for bankruptcy under Chapter 11 of the Bankruptcy Code.

Finally, on April 10, 1991, the district court granted summary judgment in favor of Sun Life. Pursuant to Fed.R.Civ.P. 54(b), the district court entered final judgment in favor of Sun Life. The Flacches appeal.

## II

■ We review the district court's grant of summary judgment de novo. *See Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir.1990).

The Flacches first assert that a claim under 29 U.S.C. § 1132(a)(3)(B), an ERISA civil enforcement provision, may be based on any violation of ERISA or the terms of the plan. They then argue that Sun Life breached fiduciary duties imposed by ERISA, violated 29 U.S.C. § 1001, which is ERISA's statement of "Congressional findings and declaration of policy," and violated the terms of the plan. Sun Life, in response, contends that the district court correctly concluded that relief is unavailable to the Flacches under 29 U.S.C. § 1132(a)(3)(B). It asserts that the Flacches have failed to support a claim against it either as a fiduciary or as a non-fiduciary.

■ It is clear that a cause of action will lie under 29 U.S.C. § 1132(a)(3)(B) for any violation of ERISA or the terms of a pension plan. The statute provides as follows:

A civil action may be brought—

. . . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3)(B). The plain language of the statute supports such a claim, and Sun Life does not contend otherwise. Sun Life does argue, however, that the Flacches have failed to support such a claim against *Sun Life.*

### A. The Breach–of–Fiduciary– Duty Theory

The Flacches contend that Sun Life breached fiduciary duties in violation of ERISA. The fiduciary duties applicable under ERISA are codified at 29 U.S.C. § 1104, and breach of these duties constitutes a violation of 29 U.S.C. § 1109, which can support a claim under 29 U.S.C. § 1132(a)(3)(B). The district court, however, held that Sun Life was not a plan fiduciary. It concluded that Sun Life could not be liable for breach of a fiduciary duty that it did not have.

The Flacches contend that Sun Life acted as a fiduciary with respect to the administration of the plan. They contend that Sun

Life qualifies as a fiduciary under 29 U.S.C. § 1002(21), ERISA's statutory definition of a fiduciary. Alternatively, the Flacches contend that Sun Life acted as a common-law fiduciary with respect to the plan.

The relevant provision of ERISA, 29 U.S.C. § 1002(21), defines a fiduciary as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

The Flacches contend that Sun Life qualifies under all three of ERISA's definitions of a fiduciary, but they focus their arguments on (ii), regarding the provision of investment advice for a fee. They claim that Sun Life, by the affidavit of its Group Manager of Pension Administration, Robert Kenney, admits that it provided investment advice with respect to the plan. They further claim that the plan administrator followed this advice. At the least, they contend, this issue presents a material question of fact.

The Flacches also claim that Sun Life qualifies as a fiduciary under definitions (i) and (iii) in the statute. They contend that, by selling and managing the annuity contract, Sun Life showed that it had discretionary authority and exercised that discretionary authority.

In response, Sun Life asserts that there is absolutely no evidence to support the Flacches' argument. It quotes the portion of Kenney's affidavit upon which the Flacches rely: "In May of 1986, SCOA Industries, Inc. ("SCOA") accepted Sun Life's proposal for a single premium group annuity contract to provide for payment of the pension benefits of SCOA's employ-ees." Sun Life contends that no reasonable construction of this statement could imply that Sun Life gave investment advice for compensation. It also cites Department of Labor guidelines, which it contends indicate that it does not meet ERISA's definitions of a fiduciary.

Sun Life was not a named party to the plan, but it did perform certain functions with respect to the plan. As the district court found, all of its functions were ministerial. It sent the Flacches the Summary of Benefits Certificate, which it based exclusively upon information provided by Irving Trust and which was approved by SCOA's Employee Retirement Plan Committee. It reduced Mr. Flacche's benefit payments to conform to the plan's formulas only after Hills directed it to do so. Claim amounts were established with reference to the formulas contained in the plan.

Under Department of Labor guidelines that elaborate on the definition of a fiduciary under ERISA,

[a] person who performs purely ministerial functions ... for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

29 C.F.R. § 2509.75–8 D–2 (1991). Sun Life performed only ministerial functions with respect to the plan. The mere payment of claims is insufficient to give Sun Life discretionary control over the management of plan assets or the administration of the plan. *See Associates in Adolescent Psychiatry v. Home Life Ins. Co.*, 729 F.Supp. 1162 (N.D.Ill.1989). Kenney's affidavit fails to support the Flacches' argument; selling Hills an annuity contract does not constitute investment advice. *See American Fed'n of Unions Local 102*

*Health & Welfare Fund v. Equitable Life Assur. Soc'y,* 841 F.2d 658 (5th Cir.1988). Sun Life is not a fiduciary under ERISA's statutory definitions.

The Flacches next offer an attenuated argument. They claim that Ohio common law defines a fiduciary as one who has a duty, created by an undertaking, to act primarily for the benefit of another in matters connected with the individual's undertaking. They believe that this definition reaches Sun Life's activities in connection with the plan. Further, they argue, ERISA contemplates the evolution of a federal common law of employee benefit plans, and federal common law traditionally is drawn from state common law. Therefore, the Flacches argue, this court should adopt the Ohio common-law definition of a fiduciary as federal common law, controlling under ERISA. This reasoning leads to their conclusion that Sun Life is a common-law fiduciary, under ERISA, with respect to the plan.

 Even assuming, *arguendo*, that Sun Life might qualify as a fiduciary under Ohio's common-law definition, we reject the Flacches' argument that Sun Life should be here considered a fiduciary by applying Ohio common-law principles. The term "fiduciary" is defined by 29 U.S.C. § 1002(21). Although the Supreme Court has held that courts are to develop a "federal common law of rights and obligations under ERISA-regulated plans," *see Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989), this directive does not imply that courts are to develop common-law alternative definitions for terms that are clearly defined by statute. The more reasonable construction limits the development of federal common law to areas where the statutes are silent or ambiguous. "A federal court may create federal common law based on a federal statute's preemption of an area only where the federal statute does not expressly address the issue before the court." *Nachwalter v. Christie,* 805 F.2d 956, 959 (11th Cir.1986). We conclude that Sun Life

was not a fiduciary with respect to the plan.[5]

Because we agree that Sun Life was not a plan fiduciary, we conclude that the district court was correct in holding that Sun Life did not breach any fiduciary duties. Under 29 U.S.C. § 1104, entitled "Fiduciary duties," "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries...." The statute imposes more specific duties, but the key is its imposition of these duties only upon "a fiduciary." The theory based on breach of fiduciary duty, therefore, fails.

### B. The Statutory–Violation Theory

The Flacches next argue that Sun Life violated 29 U.S.C. § 1001, which is part of the ERISA subchapter and, it is argued, supports a claim under 29 U.S.C. § 1132(a)(3)(B). The latter provision, as heretofore noted, creates a claim to redress any violation of the ERISA subchapter. The Flacches contend that "the benefits which Joe and Ella Flacche were directly promised by [Sun Life] were taken from them," and that "this act alone violates the pension statutes as codified in Section 1001...."

 The provision, 29 U.S.C. § 1001, is entitled "Congressional findings and declaration of policy." It is a short summary of why Congress believed that ERISA was needed and what policies it sought to advance. As such, it is impossible to violate 29 U.S.C. § 1001 so as to give rise to a cause of action under 29 U.S.C. § 1132(a)(3)(B). The provision imposes no prohibitions that one could violate; it simply articulates Congress' purpose and the policies it sought to advance.

### C. The Violation–of–the–Plan Theory

Finally, the Flacches argue that Sun Life violated the terms of the pension plan. Specifically, they contend that Sun Life did not comply with the Summary of Benefits Certificate that it sent to the Flacches.

---

**5.** Even if we were to create federal common law in this area, in the interest of uniformity, we

would not necessarily adopt the common law of Ohio.

The Flacches contend that formal statements made to beneficiaries concerning the plan or benefits, which are relied upon by the beneficiaries,[6] are enforceable even when in direct conflict with provisions of the plan itself.

■ To support a claim, 29 U.S.C. § 1132(a)(3)(B) requires a violation of ERISA or a violation of the terms of the plan. The reduction in benefits about which the Flacches complain was undertaken to correct an ongoing violation of the plan (overpayment of benefits to Mr. Flacche), not to violate the plan. The Flacches do not argue that Sun Life's conduct violates the plan as such. Rather, they argue, it does not comply with the Summary of Benefits Certificate that Sun Life sent them.

■ A substantial line of case law exists that imposes liability based upon reliance on misstatements or errors in the Summary Plan Description ("SPD"), even when the misstatements conflict with the plan itself.[7] *See, e.g., Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134 (6th Cir.1988); *see also* S. Bruce, *Pension Claims: Rights and Obligations* 390–413 (1988). Typically, such cases note the importance of the SPD, which is required by 29 U.S.C. § 1022 and, unlike the plan itself, must be written in a manner calculated to be understood by the average participant and to apprise participants and beneficiaries of their rights and obligations under the plan.

Given the SPD's important role under the ERISA framework, it is natural for courts to hold the SPD controlling when it conflicts with the plan itself. ERISA embraces a pragmatic approach: employees are unable to comprehend the technical terms of the plan itself, so the courts have found the SPD, which must be written comprehensibly, to be controlling. The comprehensible terms of the SPD take precedence over the incomprehensible, technical terms of the plan itself. This approach creates a strong incentive to write the SPD carefully, and it gives beneficiaries an understandable document upon which they can rely.

■ The Flacches, however, do not allege that the SPD in this case was inaccurate. They allege that the Summary of Benefits Certificate, a different document, contained inaccurate information. This Summary of Benefits Certificate is not an SPD under ERISA. Additionally, any obligation to furnish this information to beneficiaries belonged to the plan administrator, not Sun Life. *See* 29 U.S.C. §§ 1021(a), 1024, and 1025(a).

For the foregoing reasons, we conclude that the Flacches have failed to support a cause of action against Sun Life under 29 U.S.C. § 1132(a)(3)(B).

III

The Flacches next assert that the doctrine of estoppel can support a valid cause of action under ERISA. They contend that they reasonably relied, to their detriment (Mr. Flacche retired from his job with the parent corporation, Tishkoff), on statements and actions upon which Sun Life intended the Flacches to rely (the Summary of Benefits Certificate). Under this theory, because Sun Life represented to the Flacches that they would receive $4,846 and later $4,429.94 in monthly benefits for the duration of Mr. Flacche's life, it would be estopped from providing less than this amount. We note that the Flacches, while contending that their claim is under ERISA, assert their claim not against the plan itself but only against Sun Life.

6. As stated above, Mr. Flacche contends that he retired from his Tishkoff job in reliance upon his $4,429.94 monthly benefit check. The district court made no finding regarding the existence of such reliance, and we find it unnecessary to reach the issue.

7. The SPD is a document, required to be furnished to all plan participants and beneficiaries, that summarizes the terms and conditions of the plan. *See* 29 U.S.C. §§ 1021(a), 1022(a)(1), and 1024(b). Unlike the plan itself, the SPD must be written in terms comprehensible to the average participant or beneficiary. Obviously, the point of requiring such a document would be lost if administrators could avoid liability for misstatements in the SPD by asserting technical, incomprehensible language from the plan itself.

Sun Life argues that the Flacches' estoppel claim is not cognizable under ERISA. It contends that detrimental reliance is irrelevant under ERISA.

The district court determined that the Flacches' state-law claims based on the common-law doctrine of estoppel were preempted by ERISA. The Flacches did not appeal that determination but amended their complaint to seek relief under ERISA. Any estoppel claim that is before us, therefore, can succeed only if it is supported by ERISA.

■■ In *O'Grady v. Firestone Tire & Rubber Co.*, 635 F.Supp. 81, 83 (S.D.Ohio 1986), the district court rejected the plaintiff's common law estoppel theory as preempted, but it concluded that the facts underlying the estoppel claim could constitute arbitrary and capricious conduct by the *administrator* of the plan. An ERISA fiduciary, the court noted, has a duty to administer and interpret the plan, and under ERISA, its performance of these duties is reviewable under the arbitrary-and-capricious standard. Thus, the facts supporting the estoppel claim against the plan administrator, qua administrator, were reviewable under ERISA. *See id.*

Similarly, in *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 135–37 (6th Cir.1988), the plaintiff claimed detrimental reliance on a misleading SPD. This court concluded that statements in the SPD control over the terms of the plan itself. It further indicated that Mr. Edwards reasonably relied upon the misleading SPD and that the defendant's interpretation of the plan, coupled with its failure to notify the plaintiff of its contrary interpretation, constituted arbitrary and capricious conduct. *See id.*

In both of these cases, where facts supporting estoppel claims supported a claim *under* ERISA, a plan fiduciary or administrator took the arbitrary or capricious actions. Plan fiduciary or administrator status allowed review under ERISA.

■■ Sun Life, however, is neither a plan fiduciary nor a plan administrator. For this reason, claims based on alleged arbitrary or capricious conduct are inapplicable to Sun Life. ERISA does not expressly provide for review of the facts supporting the Flacches' promissory estoppel claim. Because ERISA does not provide for review of the Flacches' estoppel claim, we view their argument as one for a private right of action that is not expressly authorized by ERISA. The Flacches never contended that the terms of the plan entitle them to the damages they seek. For this reason, we view their claim as one for extracontractual, compensatory damages.

The Supreme Court recently entertained an argument for the implication of a private right of action against a fiduciary for extracontractual damages under ERISA. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145–48, 105 S.Ct. 3085, 3091–93, 87 L.Ed.2d 96 (1985). Applying the four-factor analysis prescribed by *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court concluded that two factors—legislative intent and consistency with the legislative scheme—prevented it from implying such a remedy. *See Russell*, 473 U.S. at 145–48, 105 S.Ct. at 3091–93. As the *Russell* opinion indicates, ERISA's civil enforcement provisions provide a reticulated, comprehensive scheme. Here, the Flacches would have us imply, under ERISA, a private right of action for extracontractual damages not against a fiduciary, as in *Russell*, but against a nonfiduciary. *A fortiori*, we decline the invitation to imply, under ERISA, such a private right of action against a nonfiduciary.

## IV

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Sun Life.