**REDALL INDUSTRIES, INC., Michael Powell, Harry Geelen, and Stanley Gardella, Trustees of the Redall Industries, Inc. Defined Benefit Pension Plan, Plaintiffs,**

v.

Lawrence J. WIEGAND, Lawrence J. Wiegand and June Wiegand, Trustees of the L.J.W., Inc. Money Purchase Plan and Trust, Alpha & Omega, also known as Alpha & Omega Financial Companies; namely, Alpha & Omega Pension Services, Inc., a Kansas corporation Personal Economics, Inc., a Kansas corporation; and Horizon Financial Services, Inc., a Kansas corporation; and Mary F. Hull, Defendants.

**YALE–REDALL COMPANY n/k/a L.J.W. Company, Inc., Lawrence J. Wiegand, and June Wiegand, Counter–Plaintiffs,**

v.

**REDALL INDUSTRIES, INC. and Michael R. Powell, Counter–Defendants.**

**Lawrence J. WIEGAND, June Wiegand, and Yale–Redall Company, Inc. n/k/a L.J.W. Company, Inc., Cross–Plaintiffs,**

v.

**ALPHA & OMEGA, also known as Alpha & Omega Financial Companies; namely, Alpha & Omega Pension Services, Inc., a Kansas corporation; Personal Economics, Inc., a Kansas corporation; and Horizon Financial Services, Inc., a Kansas corporation; and Mary F. Hull, Cross–Defendants.**

Civ. A. No. 93–73235.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 28, 1995.

See also 870 F.Supp. 175.

**1028**

Michael S. Leib, Maddin, Hauser, Wartell, Roth, Heller & Pesses, Southfield, MI, for Yale–Redall Co.

Larry E. Powe, Anthony W.Y. Walsh, Freeman McKenzie, P.C., Mount Clemens, MI, for Michael Powell.

C. Robert Wartell, Maddin, Hauser, Wartell, Roth, Heller & Pesses, Southfield, MI, for June Wiegand.

Roger F. Wardle, Kohl, Secrest, Farmington Hills, MI, for Mary F. Hull.

Daniel G. Yoe, Graves & Yoe, Lawrence, KS, for Personal Economics.

*MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT*

GADOLA, District Judge.

Plaintiff Trustees ("Trustees") of the Redall Industries Inc. Defined Benefit Pension Plan ("Redall Plan") and plaintiff Redall Industries, Inc. ("Redall") filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and state law claims. Plaintiffs seek to recover from defendants Alpha and Omega and Mary F. Hull damages to the Redall Plan which resulted from services which defendants provided to the Redall Plan.

Before the court are plaintiffs' and defendants' motions for partial summary judgment on the claims based upon ERISA, Counts VII and VIII, and most of the claims based upon state law, Counts II through V. In Count VII, plaintiffs allege that defendants

Alpha and Omega were fiduciaries of the Redall Plan under ERISA and breached their fiduciary duties by instructing plaintiffs to distribute incorrectly excessive benefits to a Redall Plan participant and by selling certain insurance policies to the Redall Plan. In Count VIII, plaintiffs allege that Mary Hull, an employee of Alpha and Omega, is a fiduciary of the Redall Plan under ERISA and breached her fiduciary duties by instructing plaintiffs to distribute incorrectly excessive benefits to a Redall Plan participant. In Counts II through V, plaintiffs allege breach of contract, malpractice, agency, and breach of warranty.

## I. Facts

On April 10, 1991, Redall and Alpha and Omega entered into a written contract in which they agreed that:

Alpha and Omega Pension Service, Inc. *upon obtaining the necessary information from the employer or the plan administrator,* will provide all of the necessary information and documents in order to keep the plan properly qualified under existing law.

The two parties entered into a similar agreement for the plan year beginning April 1, 1991 through March 31, 1992. The services which Alpha and Omega agreed to provide under contract included the following:

1. to act as agent for Employer and/or Plan Administrator, maintaining the employee census;

2. to calculate participants' levels of benefits and required contributions;

3. to prepare actuarial valuations and certifications;

4. to allocate the contributions, earnings and forfeitures for pension plans and prepare the annual allocation report;

5. to prepare annually individual certificate of participation to be distributed to participants;

6. to advise the employer of the amounts of contributions necessary to satisfy the minimum funding standards;

7. to advise Redall's accountant regarding the amount of the Plan's required contribution and the amounts deductible on the Employer's tax form;

8. to prepare annual summary of plan status and discuss report with the Employer, Trustee, and/or accountant;

9. to prepare all required annual reporting forms for the Internal Revenue Service, the Department of Labor, the Pension Benefit Guaranty Corporation, and the Social Security Administration.

The agreement also contains an important limitation on Alpha and Omega's authority:

Alpha and Omega Pension Service, Inc. *will act as an agent for the employer or for the plan administrator, but at no time will it serve as the Plan Fiduciary or the Plan Administrator.*

One of the Redall Plan participants whose benefits Alpha and Omega and Hull were required to calculate was Lawrence J. Wiegand. In 1990, Wiegand sold Redall, known at the time as the Yale–Redall Company, Inc., to Michael Powell and Harry Geelen.[1] The Contract to Purchase included a provision that Wiegand would receive his pension benefits from the Redall Plan. On September 6, 1991, Mary Hull sent Powell a letter informing him that Wiegand's vested accrued benefits from the Redall Plan were $974,346. The Trustees then distributed that amount to Wiegand. In late 1992, the Trustees consulted with independent advisors and discovered that there were errors in the calculations of employee benefits. One of these errors resulted in the Redall Plan distributing benefits to Wiegand in excess of the proper amount. The amount of benefits distributed to Wiegand was calculated based upon subchapter S corporation earnings as well as Wiegand's W–2 wages. Defendants agree that Wiegand received benefits in excess of the amount that he was due because subchapter S corporation earnings were incorrectly included in the calculation of benefits. However, the parties disagree over who made the mistake to include the subchapter S earnings in the calculation.

The parties agree that in order for Alpha and Omega to compute the benefits of Redall

Plan participants, Redall's President, Michael Powell, would forward an employee census to Alpha and Omega. Hull would then input the data received from Powell and generate a computer printout showing annual compensation figures for each plan participant. Powell also provided Alpha and Omega with subchapter S earnings information for the shareholders/employees. After Hull generated a computer printout, she would forward it to Powell for his approval. Defendants admit that subchapter S earnings should not be used to determine benefits under the Redall Plan. However, defendants contend that if Hull wrongfully included subchapter S earnings in determining benefits, she did so because Michael Powell passed that information to her as W–2 income information. According to Hull, Powell would have made the final decision to include subchapter S income as compensation. Defendants also argue that Wiegand's benefits were calculated by Jeffrey Sinclair, the actuary who had worked with the Redall Plan before Alpha and Omega. Plaintiffs argue that Powell clearly differentiated between W–2 wages and subchapter S earnings and Hull chose to include subchapter S earnings with the W–2 wages in calculating Wiegand's benefits. Plaintiffs also argue that Ray Poteet of Alpha and Omega informed Powell that subchapter S corporation earnings could be used to calculate Wiegand's benefits.[2]

During the time that Alpha and Omega were providing services for the Redall Plan, Raymond Poteet of Alpha and Omega sold insurance policies to the Redall Plan. Plaintiffs' experts explain that these insurance policies were inappropriate for the Redall Plan. Further, Poteet did not inform the Redall Plan that he received a commission for each policy sold to the Redall Plan.

Before the court are plaintiffs' and defendants' motions for partial summary judgment on Counts II through V, VII and VIII of plaintiffs' first amended complaint. On February 9, 1995, the court entered an order for

---

**1.** Stanley Gardella later became a shareholder of Redall.

**2.** Plaintiffs also argue in their motion for partial summary judgment, that defendants made other errors, including: improper determination of eli-

gibility and participation dates for several employees of the Plan and failure to obtain and use employees' spouses' birth dates in calculating benefits.

the parties to state their citizenship to enable the court to determine whether the court exercises diversity jurisdiction or supplemental jurisdiction over the state law claims. Plaintiffs have responded by alleging that there exists complete diversity. Therefore, the court will not dismiss plaintiffs' state law claims.[3]

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106

S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

### A. Fiduciary Status Under ERISA

In their motion for partial summary judgment, plaintiffs argue that defendants were fiduciaries under ERISA. Plaintiffs further argue that defendants breached their fiducia-

---

**3.** During oral argument, counsel for plaintiffs recited certain allegations of fact which were not in the record before the court. The court will only consider the facts which are on the record before the court at this time.

ry duty of care under 29 U.S.C. § 1104 by incorrectly including subchapter S corporation earnings in the compensation figures used to determine accrued pension benefits, and then directing plaintiffs to distribute benefits to a plan participant, Lawrence J. Wiegand, in excess of his actual accrued benefits. Lastly, plaintiffs argue that Alpha and Omega breached its duty of loyalty as an ERISA fiduciary under 29 U.S.C. § 1106(b) by selling insurance policies to the Plan for which Alpha and Omega received commissions.

ERISA, 29 U.S.C. § 1002(21)(A) provides that:

> Except as otherwise provided in subparagraph (b), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or ... disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Id.* Plaintiffs argue that defendants are fiduciaries because they rendered significant professional advice, for a contract fee, to the Plan Trustees and exercised sufficient discretionary authority to be considered fiduciaries under ERISA. Defendants argue that they were simply "number crunchers" performing ministerial tasks and did not exercise any authority which would qualify them as fiduciaries.

In the instant case, defendants' authority was expressly limited by the contract to preclude defendants from serving as plan fiduciaries or plan administrators. None of the services which Alpha and Omega and Hull were required to provide under the contract constitute a grant of discretionary authority by the plaintiffs to the defendants. Defendants argue that the language of the contract is irrelevant because ERISA imposes a fiduciary duty on any party to the extent that they exercise any discretionary authority or control over the management or administra-

tion of a plan covered by ERISA. 29 U.S.C. § 1002(21)(A). However, plaintiffs have failed to cite a single case where the parties expressly agreed that consultants were not to become fiduciaries and administrators and yet were found to be fiduciaries or administrators. Plaintiffs themselves signed the contract and are now attempting to hold defendants liable for being fiduciaries. The court also finds that even if the relevant provision were not part of the contract, defendants would not be liable as fiduciaries for the two alleged breaches of fiduciary duty. In *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531 (7th Cir.1991) the Seventh Circuit explained that the terms "discretionary control" and "discretionary responsibility" in 1002(21), refer to:

> actual decision making power rather than to the influence that a professional may have over the decisions made by the plan trustee she advises.

*Id.* at 535. All the facts alleged by plaintiffs indicate that Alpha and Omega and Hull made suggestions to plaintiffs, but plaintiffs had the final decision making power.

### 1. Distributing Benefits

■ Plaintiffs argue that defendants breached their fiduciary duty by instructing plaintiffs to distribute benefits to Wiegand in excess of the proper amount of his vested accrued benefits. A party may become a fiduciary with respect to those aspects of the plan over which he exercises discretionary authority. *Tregoning v. America Community Mut. Ins. Co.* 815 F.Supp. 1054 (W.D.Mich.1992), *aff'd,* 12 F.3d 79 (6th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994). Defendants argue that they had no discretionary control over distribution of benefits.

■ Both parties agree that Hull informed the Trustees that Wiegand's vested accrued benefits were $974,346 and the Trustees then distributed this amount to Wiegand. However, the calculations of benefits does not transform a consultant into a fiduciary under ERISA. *Pappas v. Buck Consultants, Inc.,* 923 F.2d 531 (7th Cir.1991). In *Pappas,* the defendants filed annual reports with the IRS concerning the actuarial valuation of the

plan. Plaintiff consulted with defendants and claimed that defendants erred in advising the plan concerning how large a distribution it could make to a certain plan participant. The *Pappas* court specifically concluded that defendants did not become ERISA fiduciaries by rendering professional actuarial advice. *Id.* at 535. In the instant case, as in *Pappas,* plaintiffs attempt to hold defendants liable as fiduciaries based upon an improperly calculated plan benefit. The *Pappas* court clearly concluded that the calculation of an overpayment to a plan participant does not transform an actuary into an ERISA fiduciary. According to the *Pappas* holding, even if Hull unilaterally determined that ERISA benefits were calculated based upon W–2 wages and subchapter S earnings, defendants would not become fiduciaries. Instead, as explained in *Pappas,* plaintiffs would have to proceed against defendants based on state law, malpractice claims.

In *Flacche v. Sun Life Assur. Co. of Canada,* 958 F.2d 730 (6th Cir.1992), the Sixth Circuit found that misstatements or errors in summary of benefits certificates do not give rise to liability under ERISA. In *Flacche,* an employer purchased insurance from Sun Life Assurance Company of Canada ("Sun Life") to pay pension plan benefits to the employer's former employees. Sun Life calculated the benefits based on data provided by the employer's former consultant, but later discovered a mistake. Sun Life contacted the employer, who directed Sun Life to reduce the benefits. Plaintiff, a plan beneficiary, sued Sun Life, arguing that he relied on more than twelve months of excessive payments. In reaching its decision to dismiss the ERISA claims, the court relied upon Department of Labor guidelines which defined a fiduciary under ERISA:

> Under Department of Labor guidelines that elaborate on the definition of a fiduciary under ERISA,
>
> (a) Person who performs purely ministerial functions ... for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discre-

> tionary control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

*Id.* at 734. The court noted that Sun Life was not a fiduciary. *Id.* Plaintiffs in the instant case do not contest that Powell had the final authority to determine whether subchapter S earnings would be included in the calculation of benefits. Further, plaintiffs have been unable to show that Hull unilaterally determined to include subchapter S earnings in calculating benefits. Plaintiffs Trustees actually distributed the benefits and do not even argue that defendants had the authority or discretionary control to distribute benefits. Furthermore, Hull stated that Jeffrey Sinclair, Redall's former actuary, had calculated Wiegand's benefits. Based upon these circumstances, the court finds that plaintiffs have not shown that defendants exercised discretionary control over the distribution of benefits.

Plaintiffs argue that the reasoning in *Flacche* does not apply to the instant case because defendants in the instant case have provided more services than the defendants in *Flacche.* Specifically, plaintiffs argue that defendants have prepared and signed the tax form as plan administrator, recommended and prepared plan amendments at the request of the plaintiffs, and directed plaintiffs to make distributions. Plaintiffs admit that none of these activities alone would require the court to find that defendants are fiduciaries. Plaintiffs argue that these activities taken together require the court to find that defendants are fiduciaries. To support their argument, plaintiffs rely on three cases, *Miller v. Lay Trucking Company, Inc.,* 606 F.Supp. 1326 (N.D.Ind.1985), *Brock v. Self,* 632 F.Supp. 1509 (W.D.La.1986), and *Pension Benefits Guaranty Corporation v. Solmsen,* 671 F.Supp. 938 (E.D.N.Y.1987). However, in all three cases, defendants exercised discretionary authority regarding plan assets which defendants in the instant case did not exercise. In *Miller v. Lay Trucking Company, Inc.,* 606 F.Supp. 1326 (N.D.Ind.1985), one defendant was listed as a fiduciary in the plan document. Defendants in the instant

case were not listed as fiduciaries in any part of the plan document. Another defendant in *Miller* was solely responsible for formulating the specifications of the proposed plan, gave investment and other advice, prepared benefit reports for participants and proposed reports for the Pension Benefit Guarantee Corporation listing himself as administrator. While defendants in the instant case participated in some of the activities as defendant in *Miller*, plaintiffs have not provided any evidence that defendants gave investment advice. Plaintiffs have also failed to provide the court with evidence that defendants were solely responsible for formulating the Redall Plan. In *Brock v. Self*, 632 F.Supp. 1509 (W.D.La.1986), defendants had provided the trust documents and made amendments without a request from the Trustees. Further, defendants in *Brock* rendered significant investment advice for a fee, guiding the plan to make an illegal agreement whereby the plan constructed a store and leased it to the corporation. In the instant case, defendants did not create the plan, nor did they suggest that the plan make an illegal investment. The issue in the instant case is whether defendants miscalculated a participant's benefits. In *Pension Benefit Guaranty Corp. v. Solmsen*, 671 F.Supp. 938 (E.D.N.Y. 1987), defendant signed as "trustee" documents implementing an agreement between the plan and State Mutual Life Assurance Company of America, establishing the pension plan at issue. The court found that defendant was a plan fiduciary because he also had the authority to handle major matters affecting the plan, decided on his own to transfer plan assets, authorized employee retirements and release of contributions, signed papers terminating the plan and appointing a trustee, and was responsible for authorizing and making payments to the plan. In the instant case, plaintiffs do not allege that defendants had the same amount of discretionary authority. The court finds that under the circumstances of this case, defendants were not fiduciaries under ERISA and therefore did not breach a fiduciary duty in miscalculating Wiegand's benefits.

## 2. Insurance Contracts

■ Plaintiffs argue that Alpha and Omega breached a fiduciary duty of loyalty by selling life insurance policies for which Alpha and Omega received commissions. Nowhere in the exhibits have plaintiffs shown that defendants suggested that plaintiffs purchase life insurance policies, or the type of policies they should purchase on behalf of the plan. Nowhere in the contract is Alpha and Omega requested to provide advice regarding the purchase of insurance contracts or provide any investment advice. Further, among the exhibits is a letter from Powell requesting that Alpha and Omega cancel certain policies. (Plaintiffs' motion for partial summary judgment, Exhibit 17.) This letter suggests that Powell was in charge of the life insurance policies and made decisions regarding the policies without the influence of Alpha and Omega. Plaintiffs rely on *Reich v. Lancaster*, 843 F.Supp. 194 (N.D.Tex.1993) to support their claim. In *Lancaster*, defendant was an ERISA fiduciary and he violated his fiduciary duty when he received commissions on certain insurance policies defendant sold to the plan which he did not disclose to the plan. In the instant case, plaintiffs have been unable to prove that Alpha and Omega are fiduciaries under ERISA. Therefore, Alpha and Omega could not have breached a fiduciary duty under ERISA.

## B. State Law Claims

■ The court finds that the parties' briefs do not adequately address the state law issues. Therefore, the court will deny without prejudice plaintiffs' and defendants' motions for partial summary judgment on Counts II through V of plaintiffs' first amended complaint.

### *ORDER*

Therefore, it is hereby **ORDERED** that plaintiffs' motion for partial summary judgment on Counts VII and VIII of plaintiffs' first amended complaint is **DENIED.**

It is further **ORDERED** that defendants' motion for partial summary judgment on Counts VII and VIII of plaintiffs' first amended complaint is **GRANTED.**

It is further **ORDERED** that plaintiffs' motion for partial summary judgment on Counts II through V of plaintiffs' first amended complaint is **DENIED without prejudice.**

It is further **ORDERED** that defendants' motion for partial summary judgment on Counts II through V of plaintiffs' first amended complaint is **DENIED without prejudice.**

SO ORDERED.